**Richard Adamek, Appellee, v. Civil Service Commission of City of Chicago, Appellant.**

**Gen. No. 47,063.**

First District, First Division.
March 10, 1958.
Released for publication May 6, 1958.

John C. Melaniphy, Corporation Counsel of City of Chicago (Sydney R. Drebin, and Joan C. Miller, Assistant Corporation Counsel, of counsel) for defendants-appellants.

Lee R. Hamburg, for appellee.

JUSTICE McCORMICK delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court of Cook county reversing, on review, an order of the Civil Service Commission finding the plaintiff (a patrolman in the Chicago Police Department) guilty of conduct unbecoming an officer in that he solicited and received a bribe, and ordering him discharged from his position. The complaint filed in the

Circuit Court alleged in substance that the finding and decision of the commission were against the manifest weight of the evidence.

The charges and specifications upon which the plaintiff was tried before the commission were in substance that the plaintiff was guilty of conduct unbecoming a police officer in that he solicited a bribe from one Mrs. Contreras in the amount of $200 and received and accepted $35, in return for which he promised to prevent the commitment of her son Robert Treyo to the Illinois School for Boys at St. Charles. The finding and decision of the Civil Service Commission set forth the specific facts constituting plaintiff's misconduct, and found him guilty of conduct unbecoming a police officer in soliciting and receiving a bribe of $35 from Irene Contreras on the promise that he would prevent the commitment of her son. The commission, finding that cause existed for the plaintiff's discharge, entered an order accordingly.

The trial court (although of course it did not see or hear the witnesses) entered a judgment reversing the decision of the commission on the grounds (1) that the evidence against plaintiff was not clear or convincing; (2) that the evidence received on behalf of plaintiff was clear, direct and plausible; (3) that all of the evidence preponderated heavily in favor of the plaintiff; and (4) that the finding and decision of the commission were contrary to the manifest weight of the evidence. The judgment and order further directed that the plaintiff be reinstated in his position.

In brief summary, the evidence before the commission consisted of testimony by Mrs. Contreras that she gave plaintiff the money, which was corroborated by the testimony of another witness present at the time, together with other supporting circumstances such as the plaintiff's going to see Mrs. Contreras at her home after he had ceased to have anything to do with the

13

case and an explanation by him of that visit which apparently the commission did not accept. On the side of the plaintiff is his denial, together with the offer of the results of a lie detector test taken by him which the commission refused to admit in evidence. No point has been made here upon such action of the commission. Counsel for the plaintiff also refers to the plaintiff's record of service which was also not in evidence before the commission. The facts will be more fully discussed later in the opinion. They are here summarized so that we may immediately proceed to a consideration of our right to pass upon the credibility of the testimony of the respective witnesses in the case.

The case before us is one of the numerous cases which come to our court from the trial court and in which the trial court almost invariably reverses the finding and decision of the Civil Service Commission. Since 1951, of 32 civil service appeals examined in the trial courts of Cook county, there were nine cases in which the findings of the civil service boards were affirmed, thirteen in which they were reversed. Of those thirteen cases eight were appealed to the Appellate Court, which reversed in all eight cases. In one case the Supreme Court granted leave to appeal and reversed the Appellate Court. Harrison v. Civil Service Com., 1 Ill.2d 137. In four cases the Supreme Court denied leave to appeal. See also "Judicial Review of Illinois Civil Service Commission Findings," University of Chicago Law Review, Vol. 20, pp. 741–747 (1952–1953).

In Nolting v. Civil Service Commission, 7 Ill.App.2d 147, we discussed the decided cases and stated the rule governing the rights and duties of the original courts of review on appeal from findings of administrative bodies, and we said, referring to that case and four other cases then pending in the same Division:

"It appears to us that these judgments were based on the erroneous assumption that courts have general

jurisdiction over orders of the Civil Service Commission and that they may consider the severity of the punishment or matters in mitigation and may enter such orders as appear kind and merciful. These proceedings do not involve contests between litigants over civil rights but are, in effect, appeals from orders of public officials in the executive department to public officials in the judicial department. It is easy in such cases for courts to fall into the error of assuming their function to be charismatic and to take on the character of a supercommission or superchief of police. That there is a marked difference of understanding between the appellate courts and the original reviewing courts with respect to the limitations of review in this class of cases appears to be supported by information collected in an article published in the Northwestern University Law Review, Vol. 47, pp. 660, 673 (1952–1953), entitled 'Civil Service Discharge Procedure in Illinois.' "

It has apparently become necessary to again state the limitations which the statute and the decisions of the courts have imposed.

█ Prior to the passage of the Administrative Review Act (Ill. Rev. Stat. 1957, chap. 110, pars. 264–279), as was pointed out in Harrison v. Civil Service Commission, supra, the decisions of the Illinois cases concerning the common law right of review by the courts of the decisions of administrative agencies were inconsistent and confused. The Administrative Review Act passed in 1945 provides for the review of the decision of any administrative agency properly under the purview of such Act, and details the procedure which must be followed. It vests the initial jurisdiction to review the final decisions of administrative agencies in the Circuit Courts of the state and in the Superior Court of Cook county. It provides that a complaint must be filed and summons issued. The defendant has the right to file an answer. Section 11 of the Act pro-

vides that the hearing and determination shall extend to all questions of law and fact presented by the entire record which is before the court. No new or additional evidence shall be heard by the court and the evidence and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct. As we said in McCaffery v. Civil Service Board of Chicago Park Dist., 7 Ill.App.2d 164: "The Supreme Court, mindful of the division of rights and powers among the administrative, legislative and judicial branches of government which are imposed by our Constitution, has delineated the scope of permissible judicial review of the findings of the Civil Service Commission . . . ." The Circuit or Superior Court reviewing an order of an administrative agency exercises a statutory and not a general appellate jurisdiction, and is restricted in the exercise of its powers, including the orders it may enter, to those expressly delegated. Brotherhood of Railroad Trainmen v. Elgin, Joliet & Eastern Ry. Co., 374 Ill. 60, cited in Drezner v. Civil Service Com., 398 Ill. 219, at p. 227. In Parker v. Dept. of Registration, 5 Ill.2d 288, the court says:

"Section 11 of the Administrative Review Act provides that the findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct. (Ill. Rev. Stat. 1953, chap. 110, par. 274.) The provisions of the act as to the scope of judicial review have been construed to mean that the courts are not authorized to reweigh the evidence or to make an independent determination of the facts. The reviewing court is limited to a consideration of the record to determine if the findings and orders of the administrative agency are against the manifest weight of the evidence. (Secaur v. Civil Service Com., 408 Ill. 197.) Under the provisions of the act requiring the courts to regard the findings of the agency as prima facie true and correct, the court has

16

a judicial function comparable to the issue at law as to whether there is competent evidence to support a judgment of a lower court. Harrison v. Civil Service Com., 1 Ill.2d 137."

The Supreme Court has repeatedly held that the only function of the courts reviewing orders of administrative agencies is to consider the record to determine if the findings and orders of the administrative agency are against the manifest weight of the evidence. Drezner v. Civil Service Com., supra; Brown Shoe Co. v. Gordon, 405 Ill. 384; Oswald v. Civil Service Com., 406 Ill. 506; Secaur v. Civil Service Com., 408 Ill. 197; Gibbons v. Retirement Board, 412 Ill. 373; Harrison v. Civil Service Com., supra; Logan v. Civil Service Com., 3 Ill.2d 81; Parker v. Dept. of Registration, supra.

The function of the Circuit Court or Superior Court in acting as the primary court of review of the finding of an administrative agency is much different from its function in passing on the verdict of the jury returned in a case tried before it. In the latter case the court has the duty and right to consider the weight of the evidence and to grant a new trial if the verdict is not sustained by a preponderance of the evidence. In the former it can only set aside the finding of the administrative agency if the finding is against the manifest weight of the evidence, and the Appellate Court has no greater right. An excellent statement of the limitations that circumscribe a reviewing court in determining whether the finding of the trier of fact is against the manifest weight of the evidence is contained in the opinion of Mr. Justice O'Connor in the case of Read v. Cummings, 324 Ill. App. 607:

"It is then the duty of the trial judge to consider the weight of the evidence and if he is of opinion that plaintiff has not proven his case by a preponderance of the evidence, taking into consideration the fact that

17

the jury has found otherwise, it is his duty to set aside the verdict and grant a new trial. And if the court does not do so but overrules the motion and enters judgment and the case is then brought to this court, we are not authorized to disturb the verdict on this ground unless the verdict and judgment are against the manifest weight of the evidence. This court in passing on the question must take into consideration not only the verdict of the jury but the fact that the trial judge saw and heard the witnesses, overruled the motion for a new trial and entered judgment. It requires much more for this court to set aside a verdict and judgment than is required of the trial judge. . . . the question of the preponderance of the evidence does not arise at all in this court. (Valant v. Metropolitan Life Ins. Co., 302 Ill. App. 196; Sears, Roebuck & Co. v. Mears-Slayton Lumber Co., 226 Ill. App. 287–290.) . . ."

The evidence appearing in the record shows that Richard Adamek, the plaintiff, was assigned to the juvenile section of the Crime Prevention Bureau and that on March 28, 1955, while he was assigned to the Maxwell Street station, he was investigating complaints concerning boys who had broken into and stolen money from parking meters. Mrs. Contreras was the mother of one of the boys involved, and the plaintiff interviewed her in the Maxwell Street station and subsequently took the boy and his mother to the Family Court building where the case was processed.

Mrs. Contreras testified that the plaintiff had told her privately on the day in question that he might keep her son from being sent to St. Charles if she paid him $200, which amount, upon her protesting, he lowered to $35. She got the money and brought it to the station and gave it to the plaintiff *in the presence of one Mrs. Gutierrez* who had accompanied her and who corroborated her testimony. The plaintiff denied both the solicitation of the bribe and the receipt of any money

18

and stated that the only conversation that he had with Mrs. Contreras and Mrs. Gutierrez was concerning their cooperation with him in order to recover the stolen money. There was testimony in the record about subsequent telephone calls and contacts made or attempted to be made with Mrs. Contreras by the plaintiff. She testified that at the time when she paid him the $35 he wanted $10 more and said that he would call at her house for it. She said she would try to get the money. Subsequently she told a man in Hull House about the solicitation and he made a report about it to the police department. Thereupon Lieutenant Delaney and Inspector Daly from the police department came to her house and talked to her. Before plaintiff went to Mrs. Contreras' house for the money he called her and told her he would see her outside. She told her son to go to the door when he came and to tell him she had gone out. She then called Lt. Delaney and told him that plaintiff was at her house. The lieutenant and inspector testified that on that occasion they saw the plaintiff waiting in front of the Contreras house. They had been there once before because they had been told that he was expected, but that time he did not come.

The testimony as to these subsequent conversations is in conflict. At the time when the plaintiff was at the home of Mrs. Contreras he had been assigned to the Marquette station and relieved of his duties at the Maxwell Street station. Nevertheless, he continued his investigations concerning the parking meters, without reporting this fact to his superior officer. He had reported that on a previous occasion he had been at the Contreras house. The plaintiff had recovered and returned to the city approximately $35 of the stolen money.

The plaintiff testified that he had called Mrs. Contreras in reply to a telephone call from her and that she had told him she had something important to talk

19

to him about. Mrs. Contreras denied that she had made this statement. Her testimony in the hearing in the Criminal Court, a transcript of which was admitted for impeachment purposes, was that she·had made the statement. No evidence was introduced concerning Adamek's police department record.

The finding and decision of the Civil Service Commission·were that the plaintiff had solicited and received a bribe of $35 from Mrs. Contreras on the promise that he would prevent the commitment of her son to the Illinois School for Boys at St. Charles. The only question properly before the Circuit Court on the appeal from the finding and decision of the Civil Service Commission was as to whether that finding and decision were against the manifest weight of the evidence. It is the duty of the trier of the fact, in this case the Civil Service Commission, to reconcile conflicting evidence if possible, and, if not, to reject the evidence which it does not believe. It is the judge of the credibility of the witnesses. The evidence as to Mrs. Contreras giving the bribe money to the plaintiff was corroborated. The evidence as to the subsequent transactions between the plaintiff and Mrs. Contreras is of such a character that inferences unfavorable to the plaintiff could properly be drawn therefrom. Considering the record as a whole it is apparent that the commission's finding is supported by ample evidence and is not contrary to the manifest weight of the evidence. The reviewing courts have no authority to try the case anew upon the record or to substitute their judgment for that of the commission or in any manner to modify or revise the commission's order. Railroad Trainmen v. E. J. & E. Ry. Co., supra. The fact that the court, if it had been hearing the case originally, would have from the evidence reached a conclusion different from that reached by the commission is immaterial.

The judgment of the Circuit Court is reversed.

Reversed.

SCHWARTZ, P. J. and ROBSON, J., concur.