Allen M. Dorfman and Union Insurance Agency of Illinois, Plaintiffs-Appellees, v. Joseph S. Gerber, Director of Insurance of the State of Illinois, Defendant-Appellant.

Gen. No. 48,653.

First District, Third Division.

October 24, 1962.

Rehearing denied December 11, 1962.

William G. Clark, of Chicago (William C. Wines, Raymond S. Sarnow, A. Zola Groves and Aubrey Kaplan, of counsel), for appellant.

Stanford Clinton, of Chicago, for appellees.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This is an appeal by the Director of Insurance of the State of Illinois under the Administrative Review Act (Ill Rev Stats c 110, §§ 264–279) from a judgment order of the Circuit Court of Cook County reversing the Director's action revoking the insurance broker's and agent's licenses of Allen M. Dorfman and Union Insurance Agency of Illinois.

Allen M. Dorfman and his mother, Rose Dorfman, were partners in the Union Insurance Agency of Illinois. In July 1959 Allen M. Dorfman and the agency were served with notices from the Director of Insurance that a hearing would be held for the purpose of determining the eligibility of Dorfman and the agency to retain their agent's and broker's licenses. A hearing on the preferred charges was held on August 6, 1959 before hearing officer Lawrence A. Berman. At the hearing the evidence disclosed that on May 10, 1953 the agency had entered into a group general agency agreement with Union Casualty & Life Insurance Company, hereafter referred to as the Company. (The Company apparently as a result of successive changes in management became known as Mount Vernon Life Insurance Company of New York, and ultimately as Northeastern Life Insurance Company of New York.) Paragraph nine of this agreement provided as follows:

"All monies received for or on behalf of the Company, while in the custody of the General

63

Agent shall be held as a fiduciary trust. They shall not be used for any purpose whatsoever, but are to be reported upon and transmitted to the Company in accordance with its instructions."

Section 505 of the Illinois Insurance Code (Ill Rev Stats 1959, c 73, § 1065.52) provides:

"That portion of all premiums or monies which an agent, broker or solicitor collects from an insured and which is to be paid to a company, its agents or his employer because of the assumption of liability through the issuance of policies or contracts for insurance, shall be held by the agent, broker or solicitor in a fiduciary capacity and shall not be misappropriated or converted to his own use or illegally withheld by the agent, broker or solicitor.

"Any company which directly or through its agents delivers in this State to any insurance broker a policy or contract for insurance pursuant to the application or request of such broker, acting for an insured other than himself, shall be deemed to have authorized such broker to receive on its behalf payment of any premium which is due on such policy or contract for insurance at the time of its issuance or delivery or which becomes due thereon not more than ninety (90) days thereafter."

Since Dorfman obtained his insurance broker's license he has written insurance in excess of $100,000,-000 total premiums. The agency had written group insurance policies for a Chicago local of an international union. When any of the insureds under this group policy were laid off from work they were permitted to make minimum payments each month so that they might maintain their insurance in full force and effect. At first the agency sent these remittances directly to

64

the Company. On or about May 15, 1954 the Company instructed the agency that when it had collected these small premium payments it should not remit them as they were received but should accumulate them and send a single remittance periodically. It was admitted that for a period of three years the plaintiff collected these funds, amounting approximately to $51,461, and sent none of them to the Company. It was also admitted that Dorfman treated these funds as his own personal funds. Dorfman in referring to the money in this account stated: ". . . I treated it as my own money." He further stated: "I felt I could use this money in any manner, shape or form I wanted to—to buy theatre tickets or automobiles or pay employees or whatever I wished; as long as I paid our bills, I felt I had the right to use these funds as though it was my own money; that is, in fact, what I did in the case of these layoff premiums."

Eighteen canceled checks were admitted into evidence showing that these funds were applied for personal uses and made payable to various payees in various amounts, including two to Dorfman himself for $2,000 and $4,000, one to the agency for $5,000, and one to himself as general agent for $1,000. On March 11, 1957 Dorfman drew a check for $39,155.33 on this layoff premium account and forwarded it to the Company. On June 21, 1957 Dorfman drew a check for the remaining balance of the account, $12,306.31, and deposited it in The Exchange National Bank of Chicago. The named payee on the check was Mount Vernon Life Insurance Company. On the reverse side of the check there was an endorsement which read as follows: "Pay Exchange National Bank of Chicago or Order, Mount Vernon Life Insurance Company." Immediately below this was the plaintiff Dorfman's signature as endorsement, which read: "Allen M. Dorfman." The deposit slip accompanying the

check directed that the money was to be placed in his personal account. The bank accordingly followed his directions. After five months had elapsed an employee of Dorfman called attention to this deposit and steps were taken to send these funds to the insurance company. It was stipulated by counsel for Dorfman and the agency that at least 97% of the layoff premiums were not remitted to the Company during the 90-day period as is required by section 502 of the Insurance Code.

On September 30, 1959 the hearing officer found that (1) Union Insurance Agency of Illinois was delinquent more than 90 days in remitting premiums to Northeastern Life Insurance Company of New York; (2) Allen M. Dorfman had misappropriated or converted to his own use or illegally withheld monies required to be held in a fiduciary capacity; (3) Allen M. Dorfman fraudulently endorsed a check drawn by Union Insurance Agency of Illinois on this fiduciary premium account at The Exchange National Bank of Chicago in the amount of $12,306.31 and payable to the order of Mount Vernon Life Insurance Company, and deposited it in his personal bank account. The hearing officer recommended that the plaintiffs' insurance broker's and agent's licenses be revoked.

On October 8, 1959 the Director of Insurance adopted the findings and recommendations of the hearing officer and revoked the respective licenses. On October 21, 1959 a petition for rehearing was denied.

An appeal was taken under the provisions of the Administrative Review Act to the Circuit Court of Cook County, and on July 14, 1961 the court reversed the Director's order of revocation. From this judgment order of the Circuit Court this appeal is taken.

The Director of Insurance contends in this court that the facts upon which the order of revocation was based were undisputed, that the order of the trial court reversing the revocation order is contrary to the

66

facts and contrary to the law, and that the trial court further erred in reversing the revocation order because it considered the penalty imposed by the Director of Insurance for the statutory violation too severe. The plaintiffs, Allen M. Dorfman and Union Insurance Agency of Illinois, contend that the judgment order of the trial court is fully in accordance with the law, that the order of revocation was against the manifest weight of the evidence, and that the hearing officer and Director of Insurance were biased and had received information outside of the record in the case.

The proper procedure involving appeals under the Administrative Review Act has been so many times stated by the courts of this State that it would seem unnecessary to again reiterate those statements. In Mitchell v. Sackett, 27 Ill App2d 335, 169 NE2d 833, we held that the Administrative Review Act itself spells out the procedure in such cases:

"It provides that the action shall be commenced by the filing of a complaint, the form of which is specifically set out; that summons shall be issued; and that an answer shall be filed by the administrative agency, which ordinarily shall consist of the original or certified copy of the entire record of proceedings under review, including the findings and decision. . . . The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct. The Circuit or Superior Court on review shall have the power to affirm or reverse the decision of the administrative agency in whole or in part, and it may send the case back to the administrative agency for the purpose of taking additional evidence. . . .

"When a decision of an administrative agency is brought on appeal to the Circuit or Superior Court under the provisions of the Administrative Review Act, the question primarily presented to

67

the court is whether or not the findings and decision of the administrative agency are against the manifest weight of the evidence, and that must be determined by the court from the record before it. 'The function of the Circuit Court or Superior Court in acting as the primary court of review of the finding of an administrative agency is much different from its function in passing on the verdict of the jury returned in a case tried before it. In the latter case the court has the duty and right to consider the weight of the evidence and to grant a new trial if the verdict is not sustained by a preponderance of the evidence. In the former it can only set aside the finding of the administrative agency if the finding is against the manifest weight of the evidence, and the Appellate Court has no greater right.' Adamek v. Civil Service Commission of Chicago, 17 Ill App2d 11, 149 NE2d 466, and cases cited therein."

In Nolting v. Civil Service Commission of City of Chicago, 7 Ill App2d 147, 129 NE2d 236, we said: "It appears to us that these judgments were based on the erroneous assumption that courts have general jurisdiction over orders of the Civil Service Commission and that they may consider the severity of the punishment or matters in mitigation and may enter such orders as appear kind and merciful." Also see Adamek v. Civil Service Commission, 17 Ill App2d 11, 149 NE 2d 466. In Parker v. Dept. of Registration, 5 Ill2d 288, 125 NE2d 494, it is stated: "The provisions of the act as to the scope of judicial review have been construed to mean that the courts are not authorized to reweigh the evidence or to make an independent determination of the facts. The reviewing court is limited to a consideration of the record to determine if the findings and orders of the administrative agency are against the manifest weight of the evidence." See also

Moline Consumers Co. v. Illinois Commerce Commission, 353 Ill 119, 187 NE 161.

In Village of Apple River v. Illinois Commerce Commission, 18 Ill2d 518, 165 NE2d 329, the court says:

"On review, the circuit court has neither the power nor the duty to conduct a de novo hearing, nor does this court, and the wisdom of the decision of the Commission is not open to inquiry."

In Crepps v. Industrial Commission, 402 Ill 606, 609, 85 NE2d 5, 7, the court says:

"It is not the province of the courts to try disputed questions of fact and to weigh the evidence thereon and set aside the findings of the Industrial Commission on such issues unless the findings of the commission are manifestly against the weight of the evidence. (Murrelle v. Industrial Com. 382 Ill 128.) The conclusion and determination of the Industrial Commission on a question of fact will not be disturbed unless against the manifest weight of the evidence, regardless of how the court might hold were it to hear the evidence. (Wilhelm v. Industrial Com. 399 Ill 80; Allen-Garcia Co. v. Industrial Com. 334 Ill 390.) Neither this court nor the lower court may substitute its judgment for that of the commission upon a question of fact, unless the finding of the commission is manifestly against the weight of, and has no substantial foundation in, the evidence. Gudeman Co. v. Industrial Com. 399 Ill 279."

In People v. Graber, 394 Ill 362, 370, 68 NE2d 750, 755, the court said:

"The general doctrine is well established that an officer to whom public duties are confided by law is not subject to the control of the courts in the exercise of the judgment and discretion which

the law gives to him as a part of his official functions; the reason for this being that the law reposes this discretion in him for that occasion and not in the courts. (43 Am Jur 72, sec 255; Gaines v. Thompson, 7 Wall 347, 74 US 62.) . . . The courts are careful of encroaching upon the discretionary power of a public officer, and if reasonable doubt exists as to the question of discretion or want of it, the courts will hesitate to interfere, preferring rather to extend the benefit of the doubt in favor of the officer. (Investors Syndicate of America, Inc. v. Hughes, 378 Ill 413.) The courts do not sit in judgment upon questions of administrative discretion. A court cannot substitute its discretion for that of executive officers in matters belonging to the proper jurisdiction of the officers. (Board of Liquidation v. McComb, 92 US 531.) . . . The domain of the judiciary is in the field of the administration of justice under the law. It interprets, construes and applies the law, but it does not interfere with the conduct of government by entering into a field of conflict for the control of executive discretion by judicial action. It does not intermeddle with the execution of discretionary powers vested in executive or administrative officers, in the absence of abuse or arbitrary or capricious exercise of such power on the part of the officers."

Also see Brotherhood of Railroad Trainmen v. Elgin, J. & E. Ry. Co., 374 Ill 60, 28 NE2d 97.

In the case before us the statute with reference to revocation of licenses, section 502 of the Illinois Insurance Code (c 73, § 1065.49), provides:

". . . a license may be revoked by the Director or the Director may suspend such license for any period of time up to, but not to exceed, two years

. . . if after notice and hearing in the manner provided he finds that the holder of . . . such license:

" . . .

"(e) Has misappropriated or converted to his own use or illegally withheld monies required to be held in a fiduciary capacity; or

"(f) Has not demonstrated trustworthiness and competency to transact business as an insurance agent, broker or solicitor in such manner as to safeguard the public; or

" . . .

"(k) Is delinquent more than ninety (90) days in the payment of any premium upon policies or contracts for insurance written, placed or renewed."

The Department found that Union Insurance Agency of Illinois was delinquent more than ninety days in remitting premiums. Such delinquency is an admitted fact. It also held that Allen M. Dorfman had appropriated or converted to his own use money which by both statute and contract he was required to hold in a fiduciary capacity. It is admitted that he had applied the funds from 1954 to 1957, which he held in a fiduciary capacity, to his own personal use, or, as he says, that he treated it as his own money, that he felt that he could use the money in any manner, shape or form he wanted to, to buy theatre tickets or to buy automobiles, or to pay employees, and that he had the same right in the funds as he had to his own money. Without going any further these admitted facts are a sufficient basis under the statute for the revocation of the licenses of Union Insurance Agency of Illinois and Allen M. Dorfman. There is no basis to argue that the factual findings by the Director of Insurance are against the manifest weight of the evidence.

71

The plaintiffs argue that the Company consented both to the withholding of the funds and their use by Dorfman as above stated. It is argued that the statute was intended to protect insurance companies and that there is evidence in the record that during the period when these funds were withheld the Company was indebted to the agency for commissions and other fees in an amount greater than the withheld funds. It is further argued by the plaintiffs that it was the intention of the legislature that the statutory provision with reference to withholding and converting funds paid to the agent or broker as premiums was solely for the protection of insurance companies, that the Company had waived it, and that there is testimony in the record that the Company did not object to the withholding by the agency or the use of the funds by Dorfman.

It would unduly prolong this opinion to go into the historical basis of insurance legislation of this type. It all goes back to the Hughes investigation in New York. The purpose of the statute is not to protect the insurance company. It is to safeguard the public and the policyholders. In the instant case Union Insurance Agency of Illinois did 90% of the Company's business, and there is testimony in the record that Dorfman did not have the usual insurance agency, that his office retained enrollment cards which are generally in the home office, that the maintenance of such records is usually the function of an insurer, that he processed claims, and that to a very substantial extent Dorfman was not an agent at all in the typical definition of the term but performed in a very substantial degree functions and activities ordinarily performed by insurance carriers. Assuming that under such conditions an agent doing this amount of business for an insurance company retained the funds given to him to pay for premiums beyond the ninety-

72

day period provided for in the statute and then absconded, as far as the insureds are concerned what help would it be to them that the insurance company owed to the agent a larger amount than the amount of the premiums which vanished with the agent. It does not require a very complicated analysis to determine what would happen to the insurance company and to the rights which the insureds had under their policies.

There is much space devoted in the briefs with reference to the facts surrounding the deposit of the $12,306.31 to the personal account of Allen M. Dorfman. The bank's vice president testified that it was a mistake of the bank. The trial judge with reference to testimony of the insurance company official and of the vice president of the bank makes the following statement: "I am not unmindful of the reasons why the insurance company would make no complaint. The record discloses that Allen M. Dorfman did practically ninety per cent of the insurance business. You could almost say he was the insurance company. Of course, as I say, I am not unmindful of probably the reasons why there would be no objection. Now then, nor am I unmindful of the fact that the officer of the bank came in and testified to the fact that it was through the inadvertence of the teller or somebody at the bank that the deposits were not properly entered or made. Well, that too, I can understand. . . ."

In the judgment order of July 14, 1961 the court finds that the record fails to disclose any evidence of fraud or embezzlement; that no one suffered any loss or damage; that the Company made no complaint about the failure of the plaintiffs to remit the premiums; "that the layoff premiums in question constituted trust funds which were the property of the insurance company"; "that the plaintiff, Allen M. Dorfman, commingled these trust funds and treated them as

73

his own money"; "that the commingling of these layoff premiums constituted a violation of Section 505 of the Illinois Insurance Code"; "that the commingling of these funds does not justify an order of revocation, as said order of revocation is too drastic and unreasonable."

In the argument before the court by counsel after the hearing was concluded the court says: "Now, the question is whether or not this justifies an order as severe as the revocation, as the order rendered in this case. Now, it is my opinion that a suspension for a period of time on a directive as to maybe how the books and accounts should be kept, and when remittances should be made, that probably would be an order. But it is my further opinion that the order of revocation is too drastic and is unreasonable and should be set aside and it is so ordered." The court further states that he considers the commingling of the funds a "technical violation."

It is not necessary for us to determine whether or not the handling of the funds by the agency and by Dorfman constituted embezzlement. In 17 ILP Embezzlement, sec 3, it is stated: "Generally, embezzlement consists in the defendant's conversion of another's funds in his possession in a fiduciary capacity, and the crime is complete when there is a fraudulent conversion without the owner's consent." At the time of the hearing there was testimony on behalf of the plaintiffs that the Company had consented to the agency's withholding of the funds. That testimony is not borne out by the evidence in the record. The directive to the agency was that it should remit the funds periodically. This directive the agency disregarded. In 17 ILP Embezzlement it is further stated, in section 11: "It is no defense to a prosecution for embezzlement that the accused intended to restore the funds or property which he had fraudulently converted or that he made an actual offer of resti-

74

tution. The fact that the party defrauded was recompensed for his loss does not relieve the accused of a charge of embezzlement." Also see People v. Nevin, 343 Ill 597, 175 NE 797; People v. Barrett, 405 Ill 188, 90 NE2d 94; People v. Dean, 321 Ill 128, 151 NE 505; People v. Binga, 360 Ill 18, 195 NE 437; People v. Riggins, 13 Ill2d 134, 148 NE2d 450. It is not necessary that Dorfman or the agency be guilty of fraud or embezzlement. As we have stated, the retention and the commingling of the fiduciary funds were sufficient under the statutory provision to sustain the revocation of the licenses of the plaintiffs. Whether the penalty was harsher than would have been imposed by the judge of the Circuit Court of Cook County who heard the case, or by us, is immaterial and cannot be considered. The determination as to whether the licenses should be revoked or suspended is given to the administrative body by the legislature of the State, and once there is sufficient evidence to bring the case within the statutory provision the extent of the penalty is a determination vested solely in the Director of Insurance. This is the rule laid down in People v. Graber and other cases heretofore discussed in this opinion. There is nothing to show that the action of the Director of Insurance was capricious, arbitrary or improper.

 The plaintiffs also argue that both the hearing officer and Director of Insurance were biased against Dorfman and the agency inasmuch as the Director of Insurance had conferred with Robert F. Kennedy, now Attorney General of the United States but formerly chief counsel of the Senate Select Committee on Unauthorized Practices, commonly known as the "McClellan Committee," and the hearing officer further stated that certain of the information upon which the hearing was predicated was made available through the McClellan Committee. In the complaint filed in the Circuit Court the plaintiffs, among other

75

things, object to the findings of the hearing officer contained in the order of the Director on the ground, among others, that both the hearing officer and the Director should have disqualified themselves because of conversations allegedly held with Robert F. Kennedy. In the argument before the court after the hearing, the court refers to the allegation in the complaint that the hearing officer should have disqualified himself, and the court says: ". . . the record shows there was some discussion about that fact and Mr. Clinton was aware of what the situation was and decided to go ahead. I think the record discloses nothing which would indicate to me that Hearing Officer Berman should have disqualified himself." In the order of July 14, 1961 the court finds, and we think properly, "that the record discloses the plaintiffs had no objection to proceedings before the hearing officer." In examining the record we find that at the time of the hearing counsel for the plaintiffs raises an objection to Mr. Berman sitting as hearing officer, and several pages of the record are devoted to discussing the point raised. However counsel for the plaintiffs did say at least twice that he had no objection to proceedings before Mr. Berman as presiding officer. The objection under those circumstances could not be raised in the trial court, and the trial court in its finding of fact in the judgment order of July 14, 1961 properly found that the hearing officer did not err in failing to disqualify himself.

■ After the hearing the plaintiffs presented a judgment order to the court setting out certain findings of law and finding that the order of revocation is excessive, arbitrary, capricious, contrary to law and should be reversed and the cause remanded to the Department for further proceedings. On July 17, 1961 the court entered an order rejecting the plaintiffs' proffered findings of fact, propositions of law and judgment order.

The plaintiffs in this court cite Ford Motor Co. v. Nat. Labor Relations Board, 305 US 364, in support of their contention that the matter should be remanded to the Director of Insurance with instructions to take additional evidence with respect to the bias and prejudice towards, and prejudgment of, the plaintiffs. It is true that the Administrative Review Act, in section 12 (c 110, § 275), does permit the trial court to remand the cause to the administrative agency for the purpose of taking additional evidence and to give instructions as to what questions require further hearing or proceedings. In the Ford Motor Co. case remandment was permitted for further evidence to supply the basis for findings on material points, and the same was true in McCaffery v. Civil Service Board of Chicago Park Dist., 7 Ill App2d 164, 129 NE2d 257. As we have said, the plaintiffs waived all of these objections at the time of the hearing before the hearing officer. We do not think it can be seriously contended that the cause should be remanded for them to now raise such objections. In any case the matters urged by the plaintiffs are not properly before this court since they did not file a cross appeal. In Bawden v. Furlong, 16 Ill App2d 174, 147 NE2d 889, the court said:

> "An appellee who desires to prosecute a cross appeal from all or any part of an order must serve and file a notice of cross appeal; the notice of cross appeal must be substantially in the form required for an appellant's notice of appeal; the notice must specify and describe the order appealed from and if the cross appeal is from a part thereof only it must specify which part: Supreme Court Rules 33 and 35,—Ch 110 Ill Rev Stats, 1955, pars 101.33, 101.35. There seems to be no way provided for an appellee to appeal from an order other than by cross appeal: Heine v. Degen (1936) 362 Ill 357. A notice of cross appeal is mandatory if the ap-

pellee desires to appeal, and unless given the matters sought to be reviewed are not preserved for review and decision by this Court: Apperson v. Hartford Accident & Indemnity Co. (1944) 322 Ill App 485; Scribner v. Village of Downers Grove (1940) 372 Ill 614; Bryant v. Lakeside Galleries, Inc. (1949) 402 Ill 466; Holmes v. Rolando (1943) 320 Ill App 475."

Even though there had been a proper cross appeal we would still hold that the order of the trial court entered July 17, 1961, which rejected the findings of fact, propositions of law and judgment order submitted by the plaintiffs, was not erroneous.

The judgment order of the Circuit Court of Cook County entered on July 14, 1961, which reversed the order of the Director of Insurance revoking the insurance broker's and agent's licenses of Allen M. Dorfman and Union Insurance Agency of Illinois, is reversed, and the order entered by the Director of Insurance is reinstated.

Judgment order reversed, and order of Director of Insurance is reinstated.

DEMPSEY, P. J. and SCHWARTZ, J., concur.