Joanne Zak, Plaintiff-Appellant, v. Fidelity-Phenix Insurance Company, a Corporation, (Successor to the Metropolitan Casualty Insurance Company of New York, a Corporation), Defendant-Appellee.

Gen. No. 49,710.

First District, First Division.

April 26, 1965.

Rehearing denied May 20, 1965.

George C. Rabens, of Chicago, for appellant.

Clausen, Hirsh, Miller & Gorman, of Chicago, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a declaratory judgment action based on an automobile liability insurance policy, issued by defendant to plaintiff and cancelled by defendant prior to an automobile collision which resulted in judgments against plaintiff. A nonjury trial terminated in a judgment for defendant, supported by thirty specific findings by the trial court.

Plaintiff appeals, contending that the cancellation was not effective, and the defendant insurer's liability has been established as a matter of law.

The action is defended by Fidelity-Phenix Insurance Company, successor to the Metropolitan Casualty Insurance Company of New York, the original defendant.

The amended complaint alleges that the insurer issued its automobile liability policy to plaintiff, Joanne Zak, effective for the period from July 18, 1958, to July 18, 1959; that on or about November 14, 1958, plaintiff was involved in a collision while operating the automobile covered by the policy; that an action was commenced against her for personal injuries and damage to an automobile; that plaintiff demanded the defense and indemnification provided by the policy; that Metropolitan refused to assume its policy obligations on the grounds that plaintiff failed to pay the premium on the policy; that judgments were entered against plaintiff, which remain unpaid; and that plaintiff has been required to pay legal expenses for her protection with regard thereto, although plaintiff has complied with the policy provisions, including the payment of the premium.

The answer of the defendant admits all of the substantial allegations of the complaint, except that it denies that the premium was paid, and alleges that the policy was cancelled on October 28, 1958, by notice received by the plaintiff on October 16, 1958. The answer alleges "the defendant denies that the plaintiff paid the premium established and set forth in the policy of insurance and for that reason the policy was cancelled, as aforesaid, and therefore not in effect on the date of the alleged occurrence."

Initially, we do not consider this case to present the question of whether the judgment was against the manifest weight of the evidence. There is no substantial dispute on the evidence. In entering judgment for defendant, the trial court made the following findings of fact. Although we do not agree with some of

the conclusions contained therein, the findings have been helpful to this court:

1. On March 1, 1958, Tom J. Agres was designated an agent by the Metropolitan Casualty Insurance Company of New York, and application for that designation was made by the company with the Director of Insurance of the State of Illinois.

2. The agency designation was for a period of one year, expiring on February 28, 1959, was effective and in existence during the month of July 1958, but as between Tom J. Agres and the defendant insurance company was cancelled at some time prior to October 16, 1958.

3. No notice of any kind was given to the plaintiff of any cancellation of the Agres agency.

4. Nick Kafkis, in the month of July 1958, and for a period of time following that date, was in the office of Tom J. Agres and attended to various aspects of the Agres insurance business, and solicited insurance business which was placed with various companies through the Agres agency.

5. A policy of automobile liability insurance, effective from July 18, 1958, to July 18, 1959, was issued to the plaintiff through the office of Tom J. Agres who had authorized Nick Kafkis, with whom the plaintiff was in direct contact, to place insurance with companies in which risks were generally placed by the Agres agency.

6. The amount of the premium was remitted in full by the plaintiff immediately after the policy was delivered to her, the remittance being by a draft payable to Nick Kafkis in accordance with his specific direction to her.

7. Neither the amount paid to Kafkis nor any part of it has been returned to the plaintiff and there has been no offer of return thereof to her.

8. The defendant's notice of policy cancellation was given to the plaintiff by registered mail on or about October 16, 1958, the notice stating that it would become effective on October 28, 1958.

9. The cancellation provision of the policy is as follows:

"15. CANCELLATION. All Parts.

". . . This policy may be cancelled by the Company by mailing to the Insured named in Item 1 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by such Insured or by the Company shall be equivalent to mailing.

". . . If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation."

10. The cancellation notice served upon the plaintiff appears as follows:

"Notice of Cancellation

Loyalty Group Loyalty Group

Policy No. AFW 618973, dated July 18, 1958, issued to you by Metropolitan Casualty Insurance Company of New York, is hereby cancelled in accordance with its terms and conditions.

The cancellation will be effective on the 26th day of October 1958 at 12:01 A. M., Standard Time, at

L———— J. Eppler
By Joseph F. Heffernen
Authorized Representative

Joanne Zak
3527 West Beldon Avenue
Chicago, Illinois

October 16th, 1958

---

Date

91025

---

Agency Code

Without prejudice to the validity or effect of the foregoing Notice of Cancellation we advise you that, according to the Company's records, the status of the premium is as follows:

### PREMIUM NOT PAID

[ ] 1. Please remit $————, being amount of the earned premium for the time the policy was in force.

[X] 2. As no premium has been received by this Company for this insurance, there is none to be returned.

[ ] 3. ————————————

### PREMIUM PAID

[ ] 4. Return premium will be refunded upon demand.

[ ] 5. Enclosed find our check in the amount of $———— in payment of the re-

346

turn premium due computed at pro rata rate for the unexpired term.

LOY-GAU 2291E"

11. The earned premium has not been computed by the company on either a pro rata or any other basis.

12. A premium adjustment was not made by the defendant either at the time of the cancellation notice or at any other time.

13. On or about November 14, 1958, the plaintiff was involved in an automobile collision out of which an action was commenced against her by one Hector Heinault and one Helen Heinault, as cause No. 59 M 301923 in the Municipal Court of Chicago; the defendant had notice of the occurrence; it refused to recognize any obligation under its insurance policy with reference thereto; and subsequently judgment was entered in favor of the plaintiffs in that action.

14. Immediately following receipt of the notice of cancellation the plaintiff was assured by Nick Kafkis that the policy was in force and that a mistake had been made with reference to the notice being given to her.

15. Immediately following the service upon her of statement of claim and summons in the action by the Heinaults, the plaintiff was again informed by Nick Kafkis that the policy was in force and that the defense would be undertaken by the defendant insurance company.

16. Following receipt of the suit papers, they were delivered to the offices of the defendant company by the plaintiff and she was there told that the matter would be given attention and that she would hear from them; but she received no further

347

advice until after she was served with execution upon judgments obtained by the Heinaults.

17. The Heinault judgments still remain unpaid.

18. The defendant's policy of insurance, issued to the plaintiff, was cancelled in accordance with and pursuant to the express terms of the contract.

19. A return of premium to the plaintiff was not required to effect a valid cancellation of the policy by the defendant.

20. The defendant was not bound to any actions or statements of an unidentified person in its offices and the defendant was not thereby estopped from denying liability to the plaintiff upon its policy.

21. The plaintiff had no notice of the cancellation of the Agres agency, but the defendant had no duty or obligation to inform the plaintiff thereof.

22. At all times herein relevant Nick Kafkis acted by and on behalf of plaintiff and was plaintiff's agent.

23. Nick Kafkis was engaged by plaintiff to procure the policy here in question.

24. The remittance given Nick Kafkis by plaintiff was negotiated by him and the amount thereof credited to his personal account.

25. No part of the remittance given Nick Kafkis by plaintiff was ever received by defendant.

26. Defendant's notice of cancellation did not set forth a reason for cancellation.

27. Neither Nick Kafkis or Tom Agres had authority to reinstate defendant's cancelled policy.

28. Prior to the receipt of defendant's notice of cancellation, plaintiff knew that Nick Kafkis had terminated his occupation of space in the office of Tom Agres.

29. Plaintiff received the defendant's notice of cancellation more than ten days prior to the specified date of cancellation.

30. Prior to November 14, 1958, plaintiff knew that the defendant had cancelled the policy issued to her and that the defendant claimed that the premium for the policy had not been received by it.

We have concluded that the determinative issue in this case is the effectiveness, as a matter of law, of the denial by defendant that the premium was paid to them by plaintiff, and of its cancellation of the policy for that reason. It is unnecessary, therefore, that we discuss or determine other grounds relied upon by plaintiff for reversal.

There is no dispute that plaintiff, Joanne Zak, paid the amount of the premium to Nick Kafkis. The defendant contends, however, that the payment of the premium to Kafkis was not equivalent to payment to it. To resolve this question, we must first determine the status of Kafkis. Chicago v. Barnett, 404 Ill 136, 141, 88 NE2d 477 (1949), employed the following definition of an insurance broker:

> "An insurance broker is defined in Ballentine's Law Dictionary as follows: 'One who acts as a middleman between the assured and the insurer, and who solicits insurance from the public under no employment from any special company, but having secured an order, he either places the insurance with a company selected by the assured, or in the absence of any selection by him, then with a company selected by such broker. A broker is the agent for the insured, though at the same time for some purposes he may be the agent for the insurer, and his acts and representations within the scope of his authority as such agent are binding on the insured.'"

349

The Insurance Code of 1937 (Ill Rev Stats 1963, c 73, § 1065.37) defines a broker in the following terms:

> "The term 'broker' means any person, partnership, association or corporation, who or which acts or aids in any manner in the solicitation or negotiation, for or on behalf of the assured, with or without compensation, of policies or contracts for insurance covering property or risks in this State of the kinds enumerated in Section 4."

The fact that Kafkis was engaged by plaintiff to act on her behalf to secure an automobile liability policy, the fact that Kafkis was at the time admittedly authorized to solicit insurance in the office of an agent of the company, Tom J. Agres, as well as other undisputed facts concerning the issuance of the instant policy, demonstrate, under the foregoing guidelines, that Kafkis was acting as an "insurance broker." We so hold.

The Insurance Code (Ill Rev Stats 1963, c 73, § 1065.-52) controls the issue of whether payment of the premium to Kafkis is to be regarded as payment to the insurer [defendant insurance company]. Section 1065.52 provides:

> "That portion of all premiums or monies which an agent, broker or solicitor collects from an insured and which is to be paid to a company, its agents or his employer because of the assumption of liability through the issuance of policies or contracts for insurance, shall be held by the agent, broker or solicitor in a fiduciary capacity and shall not be misappropriated or converted to his own use or illegally withheld by the agent, broker or solicitor.

> "Any company which directly or through its agents delivers in this State to any insurance

350

broker a policy or contract for insurance pursuant to the application or request of such broker, acting for an insured other than himself, shall be deemed to have authorized such broker to receive on its behalf payment of any premium which is due on such policy or contract for insurance at the time of its issuance or delivery or which becomes due thereon not more than ninety (90) days thereafter."

We have determined that the status of Kafkis with relation to the issuance of the instant policy was that of an insurance broker. The undisputed facts here meet the other prerequisites necessary for application of this statutory provision. The defendant, through its agent, Agres, delivered the instant policy, in Illinois, to Kafkis, pursuant to the request or application of Kafkis, who was acting for the plaintiff, Joanne Zak. Under these conditions, the statute explicitly requires that the defendant insurance company "shall be deemed to have authorized such broker to receive on its behalf payment of any premium," and that the premiums collected by the broker "shall be held by the . . . broker . . . in a fiduciary capacity. . . ."

██ The foregoing section was enacted for the benefit of the public (Dorfman v. Gerber, 29 Ill2d 191, 196, 193 NE2d 770 (1963)), and "it is to safeguard the public and the policyholders" (Dorfman v. Gerber, 38 Ill App2d 61, 72, 186 NE2d 372 (1962)). The public and policyholders would not be protected from the misappropriation of funds by brokers if responsibility for the brokers' misappropriation was placed upon the policyholder. The possibility of such misappropriation or conversion, and its effect on the insurance-buying public, appears to be the evil this statutory provision was intended to remedy [when it placed the responsibility for the brokers' misappropriation on the in-

surance company by authorizing the broker to receive premium payments on its behalf]. If a broker misappropriates or converts a premium to his own use, it is a matter to be resolved between the broker and the insurance company.

Defendant contends that "arguendo, even if Kafkis were the insurer's agent, and even if the payment of the premium to Kafkis be regarded as payment to the insurer, the insurer, under the terms of the policy here, could have cancelled the policy at any time and for any reason of its choosing, provided only that the insured be given no less than ten days notice." Defendant cites Jablonski v. Washington County Mut. Fire Ins. Co., 13 Ill App2d 499, 142 NE2d 170 (1957), to show "the reasons assigned by the insurer for cancellation do not operate to affect the validity of a cancellation otherwise properly made."

■ We agree that the privilege of cancellation of an insurance policy is an important provision in a policy, and we are not disposed to impinge upon this privilege in a proper case. However, a policy provision for cancellation, no matter how broadly phrased, cannot be used to circumvent the plain purpose of section 1065.52—the protection of the insurance-buying public from the misappropriation or conversion of insurance premiums by agents or brokers. If this cancellation were permitted to be effective, the result would be allowing an insurance company to receive premiums, and, at the same time, to cancel the policies to which they apply for nonpayment of these same premiums.

■ The evidence in this case shows that the sole reason for the cancellation of this policy was nonpayment of the premium and that Agres requested the defendant to cancel the policy for that reason, placing the burden on plaintiff of recovering the allegedly misappropriated premium from Kafkis. This was a wrongful use of the privilege of cancellation. As

plaintiff has said, "a fraud would be perpetrated upon the insured if a company were entitled to receive payment of premium and then reject the obligations under its policy by asserting that the premium had not been paid." It is true that "where the privilege of cancellation is exercised under circumstances which would make it operate as a fraud on the insured, it is invalid and ineffective." (45 CJS 82, § 448.) Justice and fair dealing require this court to declare the cancellation void and unenforceable. Therefore, absent cancellation, the policy was in force at the time of the November 14, 1958, occurrence. Defendant having wrongfully refused and failed to assume its policy obligations, it is liable for the amounts of the judgments against plaintiff, which arose out of the November 14, 1958, occurrence.

We further hold the refusal of defendant to assume liability under this policy was "vexatious and without reasonable cause," and under the provisions of the Insurance Code (§ 767), plaintiff is entitled to reasonable attorney's fees as part of the taxable costs of the instant action.

For the reasons given, the judgment of the trial court is reversed and the cause is remanded with directions to enter a proper judgment for plaintiff and for further proceedings not inconsistent with this opinion.

Reversed and remanded with directions.

KLUCZYNSKI, J., concurs.

BURMAN, P. J., dissenting:
The plaintiff in this case seeks a declaration that the defendant insurance company is liable under its automobile liability insurance policy for damages arising out of an automobile collision in which she was in-

353

volved and which occurred some time after the insurance company had cancelled the policy. The issue presented is whether the cancellation was effective.

The cancellation provisions of the policy and the notice of cancellation are set out in the majority opinion. I believe, and the plaintiff admits, that under the proper interpretation of the cancellation provision, the defendant had the right to cancel the policy for any reason. Where, as in this case, there is no provision in a policy of insurance that cancellation is conditioned upon the existence or recital of a reason for such action, the court will not read any such restriction into the policy. Jablonski v. Washington County Mut. Fire Ins. Co., 13 Ill App2d 499, 142 NE2d 170. In addition it should be noted that the cancellation clause of the policy specifies that "payment or tender of unearned premium is not a condition of cancellation."

The relation of an insurance company to its policyholders is purely contractual. It is the duty of the courts to construe and enforce them as made and not to make a new contract for the parties. Coons v. Home Life Ins. Co. of New York, 368 Ill 231, 13 NE2d 482.

The notice of cancellation provided the ten days notice as required by the cancellation provision of the policy. The notice informed the plaintiff that her policy was cancelled "in accordance with its terms and conditions." At the bottom of the notice the following appears:

> Without prejudice to the validity or effect of the foregoing Notice of Cancellation we advise you that, according to the Company's records, the status of the premium is as follows: . . . [X] 2. As no premium has been received by this Company for this insurance, there is none to be returned.

I believe that the cancellation of the policy by the defendant was effective because it met all the conditions of cancellation required by the policy. The notice states no reason for the cancellation, but as I have indicated, none was necessary under the agreement. Moreover, the fact that the defendant has not computed or adjusted the paid premium does not make the cancellation ineffective, as the plaintiff argues. In my opinion, the computation or adjustment of the premium is not a prerequisite for an effective cancellation. The language of the cancellation provision of the policy specifically states that payment or tender of the unpaid premium is not a condition of cancellation. Our courts have considered insurance policy cancellation provisions similar to that in question here and have held that the return of the unearned premium is not a condition precedent to cancellation, but only a consequence thereof, See Scapes v. Orr, 2 Ill App2d 363, 119 NE2d 479 and Leslie v. Standard Acc. Ins. Co., 327 Ill App 343, 64 NE2d 391.

The plaintiff argues that Kafkis, the person with whom she dealt and to whom she paid the premium, is the defendant's agent or is deemed to be the defendant's agent for the purpose of receiving the premium under the Insurance Code (Ill Rev Stats 1963, c 73, § 1065.52). From this the plaintiff argues that non-payment of premium was an invalid reason for the cancellation and concludes that the cancellation for that reason was also invalid. Even granting for the purposes of argument that Kafkis was the defendant's agent or is deemed to be such under the Insurance Code, I do not believe that these considerations are relevant in determining the effectiveness of a cancellation which the defendant could make for any reason of its choosing. Such was the holding of the Jablonski

355

case, cited above, which I believe to be controlling. In that case the court found, as I would find here, that the insurance policy permitted the insurance company to cancel for any reason. In that case the insurance company cancelled the policy for failure to pay an assessment which was required under the policy. The trial court had held that the assessment was invalid and hence that the cancellation of the policy was invalid because it was based on an invalid reason. The Appellate Court reversed, holding, as I would hold here, that since the policy permitted the insurance company to cancel for any reason of its choosing, the validity of any reason given for the cancellation was irrelevant in determining the validity of the cancellation.

I do not believe that the section of the Insurance Code on which the plaintiff relies was intended to restrict the insurance company's privilege of cancelling the policy in accordance with its terms and conditions. I agree that the section relied on was intended to protect the public and the policy holders as well as the insurance company. Dorfman v. Gerber, 38 Ill App2d 61, 186 NE2d 372; reversing on other grounds, 29 Ill2d 191, 193 NE2d 770. But I believe that the provision was intended only to protect the policy holder from the attempt of the insurance company, after an accident, to escape liability on the grounds that the premium had not been paid. The provision should not, in my opinion, be read to infringe on the insurance company's privilege under its policy to cancel for any reason prior to an accident. Such is especially the case here, where no premium was received by the company or by its authorized agent, Agres, and where there was no evidence to show either that the insurance company knew of the office arrangement between Agres and Kafkis or that the company knew that

Kafkis had been paid the premium by the plaintiff, and where the defendant, who knew at the time of the cancellation that Kafkis was no longer in the Agres' office, did not contact either Agres or the defendant between the time she received the notice of cancellation and the time of the accident to tell them that she had paid the premium to Kafkis.

Since the defendant effectively cancelled the plaintiff's insurance policy before the accident, it should not be held liable under the policy. Hence, I think that the judgment of the Circuit Court should be affirmed.