(No. 39383.—
JOANNE ZAK, Appellee, *vs.* FIDELITY-PHENIX INSURANCE COMPANY, Appellant.

*Opinion filed March 24, 1966.—Rehearing denied May 18, 1966.*

CLAUSEN, HIRSH, MILLER & GORMAN, of Chicago, for appellant.

GEORGE C. RABENS, of Chicago, for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

The question presented by this appeal is whether defendant, Fidelity-Phenix Insurance Company, as successor to Metropolitan Casualty Insurance Company of New York, was, at the time of an accident occurring on November 14, 1958, bound by an automobile liability policy which had been issued to the plaintiff, Joanne Zak. Contrary conclusions were reached by the circuit court of Cook County and the appellate court, the former finding that the policy had been effectively cancelled prior to the accident, and the latter that the cancellation was void and unenforceable. (*Zak* v. *Fidelity-Phenix Insurance Co.* 58 Ill. App. 2d 341.) On petition of defendant, we have granted leave to appeal.

A summary review of the facts shows that during July, 1958, Tom J. Agres was an officially designated agent for Metropolitan and had an office in Chicago. During the same month, and for several months thereafter, Nick Kafkis had a desk in the office and solicited insurance which was placed with various companies through the Agres agency. Early in July, 1958, plaintiff contacted Kafkis, a personal friend,

concerning liability insurance for an automobile she had purchased and as a result a policy with Metropolitan, effective from July 18, 1958, to July 18, 1959, was issued. On August 15, 1958, plaintiff paid the full amount of the premium due by a money order which, at the express direction of Kafkis, was made payable to him. He did not, however, transmit the premium either to Agres or Metropolitan, neither of whom had knowledge that the premium had been paid. In the meantime, Agres's records continued to show the premium as being owed by plaintiff, and Metropolitan's records carried it as an amount due from Agres.

On October 16, 1958, at the request of Agres, the insurance company sent a cancellation notice to plaintiff stating that the cancellation would be effective October 28, 1958. No reason was given, but the notice stated: "As no premium has been received by this Company for this insurance, there is none to be returned." Apropos of cancellation and refund, the policy agreements were that the company could cancel merely by mailing a ten-day notice to the insured, and that "payment or tender of unearned premium is not a condition of cancellation." Upon receipt of the notice, plaintiff contacted Kafkis and was later assured by him that he had taken care of the matter and that the cancellation was a mistake.

Shortly thereafter, on November 14, 1958, plaintiff's auto was involved in an intersection collision with another vehicle, which eventually resulted in claims by Hector and Helen Heinault. Plaintiff immediately notified Kafkis who came to see her and took a written statement of the details of the accident, representing that it would be filed with the company. Although the record is not clear, Kafkis apparently did not approach the company. Also after the accident, and as the result of admissions by Kafkis, Agres learned for the first time that plaintiff had in fact paid the premium and endeavored to have the policy reinstated. But Metropolitan, which had terminated the agency of Agres on

October 28, 1958, refused the request. Plaintiff had no knowledge of these matters but continued to believe her policy was in effect.

On March 10, 1959, plaintiff received a summons and complaint relative to an action that had been brought against her in the municipal court by the Heinaults. After a conversation with Kafkis, the details of which do not appear, plaintiff took the complaint and summons directly to the offices of Metropolitan. When she asked to speak with someone concerning a summons, she was referred to an employee who retained the papers and advised her that the company would check into the matter and take care of it. There was no denial of this testimony by defendant. Plaintiff heard nothing from the company, nor did she contact it again, until after she was served with an execution on judgments obtained by the Heinaults. About the same time plaintiff's driving privileges were suspended due to the unpaid judgments against her, and she delivered the notice of suspension and the execution to Agres, who passed them on to Metropolitan. Attorneys for the latter, however, returned the documents to plaintiff with a letter advising her "again" that the policy had been cancelled for "non-payment of premium" and was not in force when the accident occurred.

Plaintiff then instituted this action on the policy for a declaratory judgment in the amount recovered by the Heinaults, and for reasonable attorney fees incurred in the proceeding. As previously noted, the trial court held for defendant, its findings of fact indicating its conclusions that the cancellation had been valid and effective, that defendant had not reinstated the policy by its conduct and that defendant was not estopped from denying liability to plaintiff under the policy. A divided appellate court found the cancellation to be void and unenforceable, and also found that plaintiff was entitled to reasonable attorney fees as part of the taxable costs of the action.

In our judgment the conduct of defendant was such as

to estop it from now asserting that the accident was not covered by its policy. We have searched this record in vain for proof that defendant informed plaintiff of its disclaimer of liability under the policy in time to permit plaintiff to make a defense against the Heinault actions in her own behalf. The evidence shows that plaintiff, who was constantly gulled by Kafkis into believing that her policy was in force, exhibited that same attitude on March 10, 1958, when she took the complaint and summons directly to the insurer's offices. Nothing was then done to dispel that belief, but she was told instead that the matter would be looked into and "taken care of". Her understanding was that the insurer was going "to do what had to be done" about the matter.

On March 21, 1959, or shortly after plaintiff's visit to the insurer's offices, Kafkis wrote a letter, directed to Metropolitan, informing them as follows: "Because I can not be present with Mr. Agres I would like to make this statement explaining what happened to the handling of Joanne Zak's auto policy. Miss Zak paid the money for her premium to me, long before the policy lapsed. Because Mr. Agres had employed me and we have several money matters open, it was my understanding that a final tabulation would be effected and one net bill would be received. There were several other policies that should have been cancelled and they were. Along with them by accident Miss Zak's got cancelled. This was done only through misunderstanding. Miss Zak notified me of the cancellation notice immediately after receiving it and I told her it was probably an error and would have it corrected. To the best of her knowledge her insurance is still in force. When she had the accident she called me and I advised her that everything should be sent to the company, still believing that the insurance was in force." Following this Agres and Kafkis took the letter to Metropolitan, the testimony of the former concerning the incident being as

follows: "We took it in personally. I went in with Mr. Kafkis presented the letter and tried to get a settlement at that time. We were left in the air. They said they would see what they could do. I heard nothing further until later in the year, in September."

Thus it was that in March, 1959, approximately six weeks before judgments were entered against the plaintiff, the insurer knew she was being sued, was fully aware that she was asserting a claim under her policy, and was likewise fully aware that she had a reasonable basis for believing that her policy was in force at the time of the accident and that the cancellation had been a mistake. Yet, even though it had this knowledge and despite the fact it had lulled plaintiff with the assurance that the matter would be taken care of, the insurer did not inform her of its disclaimer of liability until September 25, 1959, when, still believing she had coverage, she caused the execution and the notice of suspension of her driving privileges to be sent to the company. And neither did the insurer give a timely notice of disclaimer to Agres or Kafkis, even though notification had also been promised to them and the insured was aware they were acting in the interests of plaintiff as well as their own.

We think it could be concluded with reason that defendant's conduct upon receipt of the complaint and summons was a waiver of the cancellation, (*Cf. North American Accident Ins. Co. v. Rehacek,* 123 Ill. App. 219; *Allstate Ins. Co. v. Altman,* 191 N.Y.S. 2d 270) ; however, it is enough to say that the same conduct estops defendant from denying its liability under the policy. While the application of the doctrine of estoppel under the circumstances here presented appears to be one of first impression in this court, we are persuaded by the reasoning in *Ashland Window & Housecleaning Co., Inc. v. Metropolitan Casualty Ins. Co. of New York,* 269 App. Div. 31, 53 N.Y.S. 2d 677, 680, where it was said: "No explanation has been offered for the

long lapse thereafter before the disclaimer. When an insurer wishes upon proper grounds to disclaim liability, it must inform the assured promptly of such intention and liberate the latter to make defense in his own behalf. * * * Mere delay in making a disclaimer is not enough, but where prejudice to the insured as a result of unreasonable delay in disavowing is shown by adequate proof, the insurer is estopped to assert noncoverage and becomes liable." Support for this view has also been given in *Commercial Standard Ins. Co.* v. *Blankenship,* (D.C. Tenn.), 40 F. Supp. 618, 620-621, aff'd. 134 F.2d 784; *Travelers Ins. Co.* v. *Greenough,* 88 N.H. 391, 190 Atl. 129, 130; *Clark Motor Co.* v. *United Pacific Ins. Co.* 172 Ore. 145, 139 P.2d 570, 574.

In the present case the circumstances were such as to entitle plaintiff to a notice of disclaimer, despite the prior notice of cancellation, and there appears to be neither reason nor justification for defendant's long delay in so disclaiming. That plaintiff was damaged and prejudiced thereby is manifest from the fact that the undefended action resulted in the judgments against her and the loss of her driving privileges.

We cannot agree, however, that defendant's refusal to assume liability under its policy was "vexatious and without reasonable cause" so as to entitle plaintiff to reasonable attorney fees under the provisions of the Insurance Code. (Ill. Rev. Stat. 1963, chap. 73, par. 767.) While plaintiff was the innocent victim of the wrong doing of Kafkis, defendant was equally without fault, and the conflicting judicial views provoked by the issues would seem to demonstrate rather clearly that the delay by the company was neither vexatious nor without reasonable cause. It is not the purpose of the statute to allow attorney fees simply because the defendant was unsuccessful in the litigation.

For the reasons stated and in the manner indicated, the judgment of the appellate court is affirmed in part and reversed in part, and the cause is remanded to the circuit

court of Cook County, with directions to enter a judgment for plaintiff in conformity with the views expressed herein.

*Affirmed in part and reversed in part and remanded, with directions.*