TYRONE BROWDER *et al.*, Plaintiffs-Appellants, *v.* HANLEY DAWSON CADILLAC CO. *et al.*, Defendants-Appellees.—ENRIQUE MONTELONGO, Plaintiff-Appellant, *v.* C. JAMES PONTIAC, INC., *et al.*, Defendants-Appellees.

First District (5th Division)    Nos. 77-632, 77-633 cons.

Opinion filed May 5, 1978.—Modified on denial of rehearing August 11, 1978.

Robert O. Latturner, of Uptown Legal Services, Robert E. Lehrer, of Legal Assistance Foundation of Chicago, Robert Masur, of Garfield/Austin Legal Services, and Roberta Strickler, of Northwest Legal Services, all of Chicago, for appellants.

Selwyn Zun, Robert W. Gettleman, and Jeffrey B. Schamis, all of Chicago (D'Ancona, Pflaum, Wyatt & Riskind, of counsel), for appellee C. James Pontiac, Inc.

Cohon, Raizes & Regal, of Chicago, for appellee Community Thrift Clubs, Inc.

Thomas J. Russell and William H. Kelly, Jr., both of Chicago (Mitchell, Russell & Kelly, of counsel), for other appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs brought separate actions on their own behalf and on behalf of all others similarly situated seeking injunctive relief, damages, and attorneys fees. The two complaints, which are substantially the same, alleged that defendants had acted improperly in selling plaintiffs credit life and disability insurance. In case No. 77-632, the court granted defendants' motions to dismiss all four counts of plaintiffs' complaint. In

case No. 77-633, the court granted defendants' motions to dismiss counts II, III and IV of plaintiff's complaint and plaintiff voluntarily dismissed counts I and V. Because of the identity of issues on appeal we have consolidated these cases. On appeal, plaintiffs in both cases contend that the trial court erred in granting defendants' motions to dismiss, arguing that the two complaints state valid causes of action.

In case No. 77-632, Tyrone and Lucille Browder alleged that they purchased a used 1970 Cadillac from Hanley Dawson on April 8, 1974, for $2,661. They entered into a retail installment contract whereby they paid $800 cash and financed the balance with General Motors Acceptance Corporation (GMAC) over 24 months. As part of the financing agreement, they purchased credit life insurance through Hanley Dawson at a cost of $43.53 and credit disability insurance at a cost of $93.72. GMAC assessed them $732.05 as finance charges, a 24.99% annual rate.

Larry J. Gaston alleged that he purchased a used 1973 Cadillac from Hanley Dawson on March 7, 1975, for $6,844; that he paid $1,824.97 cash and financed the unpaid balance with a retail installment contract to be paid over 36 months. His installment contract included credit life insurance at a cost of $141.99 and credit disability insurance at a cost of $243.93. Gaston was assessed $1,806.41 in finance charges, a 19.57% annual rate.

In case No. 77-633 Enrique Montelongo alleged that he purchased a used 1972 A.M.C. Gremlin from C. James Pontiac on February 28, 1976, for $1,699.75, and entered into a retail installment contract making an $800 downpayment, financing the unpaid balance of the cash price with GMAC over 18 months. His credit life insurance cost $15.81 and his disability insurance cost $40.54. GMAC assessed him $281.34 in finance charges, a 25.06% annual rate.

Penn Security Life Insurance Company issued the credit insurance sold to Browder and Gaston. Great Equity Life Insurance Company issued the credit insurance sold to Montelongo. Both policies insured that in event of the death or continuing disability of the assured the indebtedness to GMAC would be satisfied. The premium charged for the life insurance in all three instances was based on a rate of $0.65 per $100 of initial insurance per annum. Of the total premiums charged plaintiffs, the car dealers retained 40%.

The crux of both complaints is that Hanley Dawson and C. James as General Motors dealers failed to inform plaintiffs that a cheaper but comparable Prudential policy ($0.375 per $100) was available through them. The first four counts of both complaints are substantially the same. Montelongo voluntarily dismissed counts I and V of his complaint. The remaining counts in both complaints were dismissed by the court pursuant to defendants' motions to dismiss. Plaintiffs contend that the trial court erred when it granted defendants' motions to dismiss.

OPINION

## As to count I

Because Montelongo voluntarily withdrew the first count of his complaint we consider count I only as to Browder and Gaston who allege that Hanley Dawson sold them credit insurance in violation of the Motor Vehicle Retail Installment Sales Act ((MVRISA) (Ill. Rev. Stat. 1973, ch. 121½, par. 561 *et seq.*)[1] which incorporates by reference section 155.56 of the Illinois Insurance Code (Ill. Rev. Stat. 1973, ch. 73, par. 767.56).[2] They claim that contrary to section 155.56, Hanley Dawson failed to provide them with copies of the policies or certificates of insurance at the time of the transaction. They further allege defendants failed to give them copies of their applications or notices of proposed insurance in accordance with this section. Moreover, they allege that the information contained in the installment contract was inadequate to meet the standards set forth in section 155.56 because it did not, *inter alia*: "A) identify the persons insured; B) contain a description of the amount of insurance; C) contain a description of the term of insurance; or D) contain a description of the coverage provided by the insurance." As a result of these alleged violations plaintiffs ask that Hanley Dawson be enjoined from selling credit insurance without providing to their purchasers the information required by law. They also seek to invoke section 24(b) of MVRISA (Ill. Rev. Stat. 1973, ch. 121½, par. 584(b)) which states:

> "No person who violates this Act, except as a result of an accident or bona fide error of computation, may recover any finance charge, any delinquency or collection charge or any refinance charge in connection with the related retail installment contract."

---

[1] Ill. Rev. Stat. 1973, ch. 121½, par. 561 *et seq.*, regulates the retail installment sales of motor vehicles and provides penalties for the violation thereof.

[2] Ill. Rev. Stat. 1973, ch. 73, par. 767.56, provides:

"Provisions of policies and certificates of insurance; disclosure to debtors.)

(a) All credit life insurance ° ° ° shall be evidenced by an individual policy, ° ° ° which ° ° ° shall be delivered to the debtor.

(b) Each individual policy ° ° ° shall, in addition to other requirements of law, set forth, the name and home office address of the insurer, and the identity ° ° ° of the person or persons insured, ° ° ° a description of the amount, term and coverage ° ° °.

(c) Said individual policy ° ° ° shall be delivered to the insured debtor at the time the indebtedness is incurred except as hereinafter provided.

(d) If said individual policy ° ° ° is not delivered to the debtor at the time the indebtedness is incurred, a copy of the application for such policy or a notice of proposed insurance, signed by the debtor and setting forth the name and home office address of the insurer, the identity ° ° ° of the ° ° ° insured, ° ° ° a description of the amount, term and coverage ° ° ° shall be delivered to the debtor ° ° °. The copy of the application ° ° ° or notice ° ° ° shall refer exclusively to insurance coverage, and shall be separate and apart from the loan, sale or other credit statement of account, instrument or agreement, unless the information required ° ° ° is prominently set forth therein. Upon acceptance of the insurance by the insurer and within 30 days ° ° ° the insurer shall cause the individual policy ° ° ° to be delivered to the debtor ° ° °."

■■■ We agree with plaintiffs that whether or not Hanley Dawson complied with the dictates of section 155.56 is a question of fact. Even if we assume that the information required by this section is "prominently set forth" in the installment contract thus eliminating the need for a separate instrument (Ill. Rev. Stat. 1973, ch. 73, par. 767.56), we find other features in the contract which arguably are not in compliance with the law. For example, Hanley Dawson lists the address of Penn Security as "St. Louis, Mo." Whether this is sufficient to comply with the section 155.56(d) requirement that the insured be given "the home office address of the insurer" is a question of fact. Furthermore, the contract does not specify which Browder, Tyrone or Lucille, is insured. A motion brought pursuant to section 45 attacks the legal sufficiency of the complaint, not its factual sufficiency. (Ill. Rev. Stat. 1975, ch. 110, par. 45.) "[D]efenses which are factual in their nature rather than legal are not available to defendants on a motion to dismiss, but should be set forth in their answer." (*Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574, 586, 325 N.E.2d 799, 808.) Accordingly, we remand count I of case No. 77-632 for further proceedings. If on remand the allegations prove correct, plaintiffs will be entitled to an injunction prohibiting Hanley Dawson from selling credit insurance without providing the information required by law and to recoup any finance charges which they paid to defendants in connection with their retail installment contracts.

### As to count II

In count II of both complaints plaintiffs alleged that C. James and Hanley Dawson violated their common law fiduciary duty as insurance brokers and the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1973, ch. 121½, par. 261 *et seq.*) when they failed to disclose the availability of and offer the cheaper, but comparable, Prudential life insurance policy. They request as damages all charges for insurance in excess of that which would have been imposed for Prudential insurance.

Determination of the common law portion of count II requires an analysis of whether C. James and Hanley Dawson are insurance brokers, and if so, whether they were acting as agents for plaintiffs.

As purveyors of insurance defendants are either insurance agents or insurance brokers. An insurance broker has been defined as:

> "* * * one who procures insurance and acts as middleman between the insured and the insurer, and solicits insurance business from the public under no employment from any special company, but, having secured an order, places the insurance with the company selected by the insured, or, in the absence of any

selection by him, with the company selected by such broker. 22 ILP, Insurance, §71, at 102." *Galiher v. Spates* (1970), 129 Ill. App. 2d 204, 206-07, 262 N.E.2d 626, 628.

■■ An insurance broker is distinguished from an insurance agent in that he is not permanently employed by any principal, but holds himself out to employment by the public. His employment in each case is that of a special agent for a single object. *City of Chicago v. Barnett* (1949), 404 Ill. 136, 88 N.E.2d 477.

Whether a person is an insurance agent or an insurance broker is determined by his acts (*Tri-City Transportation Co. v. Bituminous Casualty Corp.* (1941), 311 Ill. App. 610, 37 N.E.2d 441) and is dependent upon who called him into action, who controls his movement, who pays him and whose interests he represents. *Moone v. Commercial Casualty Insurance Co.* (1953), 350 Ill. App. 328, 112 N.E.2d 626.

If it is determined that Hanley Dawson and C. James are insurance brokers rather than insurance agents, it will be necessary to determine whether they were acting as agents for the insureds. The term "agent" here is to be distinguished from "insurance agent." Although there is support for the proposition that an insurance broker is by definition an agent of the insured (*Ross v. Thomas* (1977), 45 Ill. App. 3d 705, 360 N.E.2d 126), whether a broker is an agent for the insured, the insurer or both is actually a question of fact. (*Lumbermen's Mutual Insurance Co. v. Bell* (1896), 166 Ill. 400, 45 N.E. 130.) While a broker usually represents the insured (*Budget Premium Co. v. Inter-Insurance Exchange* (1965), 55 Ill. App. 2d 277, 204 N.E.2d 310), he may become the agent of the insurer or even of both parties. (*City of Chicago v. Barnett* (1949), 404 Ill. 136, 88 N.E.2d 477.) Accordingly, the court must closely examine the facts in each case to determine whether a seller of insurance is an agent or broker and to whom he may owe a duty. See, *e.g., Budget Premium Co. v. Inter-Insurance Exchange*, and *Zak v. Fidelity-Phenix Insurance Co.* (1965), 58 Ill. App. 2d 341, 208 N.E.2d 29, *aff'd in part, rev'd in part on other grounds* (1966), 34 Ill. 2d 438, 216 N.E.2d 113.

In considering a motion to dismiss, the trial court must accept as true all facts well pleaded as well as reasonable inferences which can be drawn from those facts. (*Dear v. Locke* (1970), 128 Ill. App. 2d 356, 262 N.E.2d 27; *Bray v. Illinois National Bank* (1976), 37 Ill. App. 3d 286, 345 N.E.2d 503.) The decision to grant defendants' motion to dismiss may be sustained only if no set of facts as pleaded by plaintiff could conceivably state a cause of action. (*Courtney v. Board of Education* (1972), 6 Ill. App. 3d 424, 286 N.E.2d 25.) From this analysis it is obvious that whether C. James and Hanley Dawson were brokers acting as agents on plaintiffs' behalf is not a question of law to be determined solely from the pleadings.

Rather, this determination can only be made after a full hearing. Accordingly, we must remand the common law allegations of count II for further proceedings.

■■■ Should the facts prove C. James and Hanley Dawson to be agents of the insureds, they would be governed by the principles of agency law (*City of Chicago v. Barnett* (1949), 404 Ill. 136, 88 N.E.2d 477) in which the relationship between principal and agent is fiduciary in character. (*Lageschulte v. Steinbrecher* (1976), 36 Ill. App. 3d 909, 344 N.E.2d 750.) In all transactions affecting the subject of the agency the law dictates that an agent must act in utmost good faith and must make known to his principal all material facts within his knowledge which may in any way affect the transaction and the subject matter of his agency. (*Moehling v. W. E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 170 N.E.2d 100.) Certainly price must be considered a material fact. In *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605, the supreme court held that defendant's failure to disclose to plaintiff borrower, in an accounting of loan proceeds, that it had obtained a 10% rebate on funds disbursed to the title insurance company was a violation of fiduciary duty.

Similarly here, if C. James and Hanley Dawson are shown to be agents of plaintiffs, then failure to disclose the availability of comparable lower cost insurance would be a breach of fiduciary duty.

■■ C. James and Hanley Dawson contend, however, that it is legally impossible for a used car dealer to be a fiduciary. They argue that as a fiduciary a car dealer would be required to disclose the profit made on the sale of the car, on the sale of any trade-in, on the financing of the purchase price and on the sale of any insurance. However, more is involved here than a mere buyer-seller relationship which might not of itself give rise to a fiduciary duty. Merely because defendants here operate two businesses under one roof does not mean that the standards of selling cars must apply to selling insurance. When defendant car dealers sell insurance the common law duties of either insurance brokers or insurance agents apply. Thus, it is possible defendant car dealers might owe a fiduciary duty to customers who buy insurance.

Defendant car dealers also argue that because a fiduciary cannot accept a commission from third parties (*Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605) but an insurance broker must receive his commission from the insurance company (except in very limited circumstances not applicable here) (Ill. Rev. Stat. 1973, ch. 73, par. 1065.40), an insurance broker cannot, as a matter of law, be a fiduciary of the insured. We disagree. Although the above section of the Insurance Code requires a broker to deduct his commission from the

premiums, it does not otherwise relieve a broker of his common law obligations as agent of the insured.

■■ In the statutory portion of count II, plaintiffs allege that C. James and Hanley Dawson violated the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1973, ch. 121½, par. 261 *et seq.*) Section 2 of the Act prohibits:

> "* * * the use * * * of any * * * misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact, * * *." Ill. Rev. Stat. 1973, ch. 121½, par. 262.

Plaintiffs argue that C. James and Hanley Dawson were concealing, suppressing or omitting a material fact in failing to disclose the cheaper insurance.

Because of the relatively recent passage of section 2 of Consumer Fraud, there is little Illinois case law interpreting this section. However, we note that *In re Dickson* (W.D.N.C. 1977), 432 F. Supp. 752, considered the issue raised here in reference to a North Carolina statute (N.C. Gen. Stat. 53-180(g)) which prohibits unfair or deceptive trade practices in making loans to borrowers. There the court concluded that:

> "[S]elling credit insurance at inflated premiums, receiving a 25% commission, and failing to disclose these facts, while in a fiduciary relationship with the borrower constitutes an unfair and deceptive trade practice within the meaning of the statute." (432 F. Supp. 752, 761.)

We agree and therefore hold that the statutory allegation in count II states a cause of action.

Defendant car dealers argue that the *Dickson* decision was the result of the totality of circumstances in that case. However, the circumstances were: (1) the failure to disclose to the borrower that he could procure credit insurance from other sources, (2) the failure to disclose to him that defendant made a commission on the sale of the insurance, and (3) charging an excessive premium for insurance. All these factors are alleged in the instant case.

## As to count III

In count III of both complaints plaintiffs allege that C. James and Hanley Dawson violated sections 8 and 9.01 of MVRISA. (Ill. Rev. Stat. 1973, ch. 121½, pars. 568, 569.01.) These sections provide that the amount charged the insured for credit insurance shall not exceed the premium charged by the insurer. Plaintiffs argue that car dealers violated these sections by MVRISA by retaining 40% of the insurance premiums.

Plaintiffs correctly point out in their briefs that C. James and Hanley Dawson failed to deny in their motions to dismiss that the conduct alleged in count III of the complaints violates the statutes cited. Instead defendants assert that the amounts provided in the contract for credit life insurance are the exact amounts payable to Penn Security, terming the 40% they retained as commission. Again defendants are pleading facts in a motion to dismiss. Whether the 40% they retained is indeed a commission, at the very least should be settled by a motion for summary judgment. A motion brought pursuant to section 45 attacks the legal sufficiency of the complaint, not its factual sufficiency. (Ill. Rev. Stat. 1975, ch. 110, par. 45.) "[D]efenses which are factual in their nature rather than legal are not available to defendants on a motion to dismiss, but should be set forth in their answer." (*Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574, 586, 325 N.E.2d 799, 808.) Accordingly, count III must be remanded for a factual determination.

### As to count IV

In count IV of both complaints plaintiffs allege that C. James and Hanley Dawson, with the knowledge and acquiescence of GMAC, violated MVRISA by levying a "finance charge" in excess of that allowed by the Act. Although plaintiffs admit in count IV of their complaints that the finance charge stated in the retail installment contract does not exceed the maximum interest rate established by MVRISA, they nonetheless assert that it is understated because defendants did not include as part of that charge the commission they earned in selling credit insurance.

■■ We disagree. Under the provisions of section 2.9(5) (Ill. Rev. Stat. 1973, ch. 121½, par. 562.9(5)), if credit insurance is not required and this fact is clearly disclosed to the customer, who nevertheless gives specific, dated and separately signed affirmative written indication of his desire to obtain the insurance, then interest on premiums for such insurance is not a "finance charge."

In the present case although the installment contract clearly provides that "CREDIT INSURANCE IS NOT REQUIRED BY SELLER," plaintiffs nonetheless chose to purchase insurance, dating and signing the following statement, "BUYER'S APPROVAL: I DESIRE TO OBTAIN THE CREDITOR INSURANCE CHECKED ABOVE FOR THE BUYER PROPOSED FOR INSURANCE." Because the insurance provisions of this contract comply with the dictates of section 2.9(5) of MVRISA, the interest on such premiums cannot be considered as a part of the finance charges.

Although no Illinois court has reviewed the exclusion from finance charges set forth in section 2.9(5) of MVRISA, the United States Court of Appeals for the Fifth Circuit has considered a similar exclusion (12 C.F.R.

§226.4(a)(5)) promulgated under the Federal Consumer Credit Protection Act (15 U.S.C. §1601 *et seq.*) as it applied to a retail installment contract which was virtually the same as that used here and came to the same conclusion we have. *Philbeck v. Timmers Chevrolet, Inc.* (5th Cir. 1974), 499 F.2d 971; accord, *Stanley v. R. S. Evans Motors* (M.D. Fla. 1975), 394 F. Supp. 859.

Consequently, we hold that the court correctly struck count IV of both complaints.

For the foregoing reasons the judgment of the circuit court dismissing count IV of both complaints is affirmed. The remainder of the judgment dismissing count I in case No. 77-632 as well as counts II and III in both complaints is reversed and these portions of the complaints are remanded for further proceedings not inconsistent with the opinions expressed herein.

Affirmed in part; reversed in part; remanded with directions.

SULLIVAN, P. J., and WILSON, J., concur.