INTERNATIONAL ADMINISTRATORS, INC. and Sheldon Harrison, Plaintiffs,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.

No. 82 C 625.

United States District Court, N.D. Illinois, E.D.

Nov. 5, 1982.

implementing the settlement agreement.

John R. Ruddy and Robert J. Becker, Chicago, Ill., for plaintiffs.

William J. Holloway and Michael J. Leech, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

International Administrators, Inc. ("IAI") and its President Sheldon Harrison ("Harrison") initially sued Life Insurance Company of North America ("LINA"), claiming interference with IAI's contractual relationships, interference with prospective advantage, breach of contract and defamation. LINA in turn filed a two-count counterclaim. IAI has moved to dismiss the Counterclaim, apparently (though not specifically designated) under Fed.R.Civ.P. ("Rule") 12(b)(6) for failure to state a cause of action. For the reasons stated in this memorandum opinion and order, IAI's motion is denied.

### Counterclaim Count I[1]

■ Count I depicts the following version of events[2]:

Insurance broker IAI, acting for the Iowa Department of the American Legion ("Iowa

---

1. All paragraph references to the Counterclaim itself will read simply "Count I [or II] ¶—." Because the Counterclaim incorporates LINA's Answer to the Complaint by reference, paragraphs from the Answer will be cited "Ans. ¶—."

2. Validity of the Counterclaim's allegations must of course (to the extent "well-pleaded") be assumed for purposes of this Rule 12(b)(6) motion.

Legion"), solicited LINA to underwrite various group insurance policies for members of the Iowa Legion (Ans. ¶ 11). As administrator of those insurance programs IAI assertedly maintained records[3] "for the benefit of and in trust for the policyholder, the insureds, and ... LINA" (Count I ¶ 4). For several months after its termination as administrator, IAI refused to turn over its records to the Iowa Legion, LINA or a successor administrator (Count I ¶ 7). Without the information in those records, LINA (or the successor administrator) could not have billed the individual subscribers, jeopardizing their continued coverage. To avoid that prospect, LINA expended more than $26,000 to generate its own substitute list.

In LINA's view those allegations disclose actionable fiduciary and contractual improprieties by IAI. IAI's infractions assertedly stem from its role as LINA's agent or alternatively as trustee of an express trust whose beneficiaries included the Iowa Legion, the individual subscribers and LINA.

Without offering *any* legal support for its *own* motion,[4] IAI contends LINA's cited authorities do not transmute its legal theories into a cognizable claim. IAI also assails Count I on factual grounds[5]—arguments wholly inappropriate at the pleading stage.

█ Standards governing complaints (or counterclaims) are lenient indeed:

3. Among other information the records reflect names and addresses of the individual insureds, the premiums ,charged and the payments received.

4. This Court has once before had the unpleasant task of commenting on the lack of lawyering by IAI's counsel, 541 F.Supp. 1080, 1081 n. 1 (N.D.Ill.1982). It is *not* the function of the Court's law clerk Richard Levy, or the Court itself, to pull counsel's chestnuts out of the fire—or, as on this motion, to try to locate cases that might support IAI's position.

5. For example IAI urges industry custom recognizes its entitlement to the records. It also faults LINA for failing (1) to identify methods used to develop its substitute list of insureds and (2) to explain why LINA rather than the successor administrator spent the money to do so.

On a motion to dismiss, a complaint must be construed in the light most favorable to the plaintiff, the allegations thereof being taken as true; and, if it appears reasonably conceivable at trial the plaintiff can establish a set of facts entitling him to some relief, the complaint should not be dismissed.

*Mathers Fund, Inc. v. Colwell Co.,* 564 F.2d 780, 783 (7th Cir.1977). Nor is this Court limited by the theories advanced by the pleading's author. *See Craft v. Board of Trustees,* 516 F.Supp. 1317, 1323 (N.D.Ill. 1981).

█ Under those liberal criteria Count I withstands scrutiny—at least under Illinois principles of agency law.[6] Both parties agree IAI acted as an insurance broker in obtaining LINA-underwritten insurance coverage for the Iowa Legion. *See* Complaint ¶ 3 and Answer ¶ 11. *Galiher v. Spates,* 129 Ill.App.2d 204, 206, 262 N.E.2d 626, 628 (4th Dist.1970) defined such a broker:

An insurance broker is one who procures insurance and acts as middleman between the insured and the insurer, and solicits insurance business from the public under no employment from any special company, but, having secured an order, places the insurance with the company selected by the insured, or, in the absence of any selection by him, with the company se-

6. No such opinion is expressed as to LINA's "trust" theory, which must clear several formidable hurdles. *See generally, Price v. State,* 79 Ill.App.3d 143, 148, 34 Ill.Dec. 690, 695–96, 398 N.E.2d 365, 370–71 (1st Dist.1979). For example, an express trust is consensual in nature—and that implicates a showing of intent. Such intent cannot be inferred solely from the insureds' payment of premiums to IAI (payment, which would also be made to IAI on contractual or agency terms, is wholly neutral as to the nature of the relationship). More significantly, even the proof of a trust would not settle the issue. LINA must also establish *its own* status as a beneficiary under the trust. It has advanced no authority, and this Court is aware of none, bestowing beneficiary status on a third-party-supplier of a product the trustee was obligated to procure for its direct beneficiaries.

lected by such broker. 22 ILP Insurance § 71, at 102.

And as the Illinois Supreme Court characterized the difference between the insurance broker and agent relationships over 30 years ago, *City of Chicago v. Barnett,* 404 Ill. 136, 142, 88 N.E.2d 477, 481 (1949) (emphasis added, citation omitted):

> A broker is distinguished from an agent in that a broker sustains no fixed and permanent employment by, or in relation to, any principal, but holds himself out for employment by the public generally, his employment in each instance being that of a special agent for a single object . . ., whereas an agent sustains a fixed and permanent relation to the principal he represents and owes a permanent and continued allegiance. *A broker does not cease to be a broker because he may also in some transactions act as the agent of either or both of the parties thereto.*

*See also Browder v. Hanley Dawson Cadillac Co.,* 62 Ill.App.3d 623, 629, 20 Ill.Dec. 138, 143, 379 N.E.2d 1206, 1211 (1st Dist. 1978).

 Thus Illinois law clearly allows for at least the possibility of an insurance broker (in this case IAI) serving as the agent of the insurer (here LINA). Questions as to the broker's status have always been regarded as factual. *See Browder,* 62 Ill. App.3d at 629, 20 Ill.Dec. at 143, 379 N.E.2d at 1211; *Galiher,* 129 Ill.App.2d at 207, 262

N.E.2d at 628. Accordingly IAI's motion to dismiss Count I must fail.[7]

*Counterclaim Count II*

Count II ¶¶ 8 and 9 allege IAI "failed and refused to remit promptly to LINA premiums collected by IAI on group insurance plans" both during and after its tenure as administrator. Count II seeks damages (in the form of interest) for the temporary loss of use of the premium funds.

 LINA again invokes fiduciary precepts in the trust context to provide Count II's legal underpinning. Characterizing the premiums received by IAI as the trust res, LINA claims the right to recover interest for trust property wrongfully withheld. Without sharing (either with this Court or opposing counsel) the legal research that it may be hoped prompted the filing of its motion,[8] IAI simply denies in conclusory fashion any statutory, contractual or fiduciary basis for Count II.[9]

LINA's "trust" theory cannot now prevail because of the same potential shortcomings discussed at n. 6. But a provision of the Illinois Insurance Code (apparently overlooked by LINA), Ill.Rev.Stat. ch. 73, § 1065.52, supplies enough of a foundation to keep Count II in court:[10]

> Any premiums or other monies which an agent or broker collects from an insured

---

7. This is not to say Count I will likely prevail on the merits or even survive a summary judgment challenge. Illinois case law in this area generally regards brokers solely as agents for the insureds (though sometimes the agency relationship is a limited one). *See Browder,* 62 Ill.App.3d at 629, 20 Ill.Dec. at 143, 379 N.E.2d at 1211. Some Illinois courts have fashioned a four-pronged test to determine which interests the broker represents:
 1. Who set him in *motion* first?
 2. Who could *control* his actions?
 3. Who *pays* him?
 4. Whose interest was he to *protect?*
 *Roby v. Decatur Steel Erectors, Inc.,* 59 Ill. App.3d 720, 725, 17 Ill.Dec. 71, 75, 375 N.E.2d 1355, 1359 (4th Dist.1978). *See also Browder,* 62 Ill.App.3d at 629, 20 Ill.Dec. at 143, 379 N.E.2d at 1211. This analytical framework has generally been employed in suits between the insurer and insured, where liability hinged on who bore the risk (on an agency theory) of

wrongful conduct of the insurance broker. Applicability of the same, or some other, calculus to this case is a question for the future.

8. See n. 4.

9. IAI also criticizes Count II's failure to specify when its wrongful conduct occurred and which insurance plans were affected. Such detailed factual allegations are not essential under the notice pleading concept of federal practice. *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957).

10. That provision was enacted not only to protect the insured public but also to express the broker's fiduciary obligations to the insurer as well. Certainly that is a permissible inference from its repeated use of the "illegally withholds" language. *Dorfman v. Gerber,* 29 Ill.2d 191, 196, 193 N.E.2d 770, 771–72 (1963).

**86**

and which are to be paid to the agent's or broker's employer, a company, or its agents because of the assumption of liability through the issuance of policies or contracts for insurance, shall be held by the agent or broker in a fiduciary capacity and shall not be misappropriated or converted to his own use or illegally withheld by the agent or broker.

Any company which directly or through its agents delivers in this State to any insurance broker a policy or contract for insurance pursuant to the application or request of such broker, acting for an insured other than himself, shall be deemed to have authorized such broker to receive on its behalf payment of any premium which is due on such policy or contract for insurance at the time of its issuance or delivery or which becomes due thereon not more than 90 days thereafter.

In the case of an open accounts receivable with the balance payable to an agent or broker within a specified period of 90 days or less, and the balance is not fully paid within such period, a late charge not exceeding 1½% per month may be added by the agent or broker to the unpaid balance to induce payment of the premium.

Whenever an agent or broker knowingly misappropriates or converts to his own use or illegally withholds premiums, in the amount of $150 or less he is guilty of a Class A misdemeanor and for a second and subsequent violation he is guilty of a Class 4 felony; when an agent or broker knowingly misappropriates or converts to his own use or illegally withholds premiums in excess of the amount of $150 he is guilty of a Class 3 felony.

Thus, by statutory fiat IAI acts as the agent of the insurer in handling the premiums collected from the insureds. *See, Davidson v. Comet Casualty Co.,* 89 Ill. App.3d 720, 723–24, 44 Ill.Dec. 943, 946, 412 N.E.2d 19, 22 (2d Dist.1980).

11. Given the statutory language, the same conclusion might be reached on conversion

True enough the statute does not in terms state whether a broker—who as an insured's agent holds collected premiums "in a fiduciary capacity"—occupies that capacity in relationship to the insurer as well as the insured. Nonetheless the references to "illegally withhold[ing]" premiums inferentially carry some notions of timeliness.[11] And that is enough, at least at this threshold stage of the litigation, to survive a Rule 12(b)(6) motion.

### Conclusion

IAI has not produced anything to negate the facial plausibility of both counts of LINA's Counterclaim under Illinois law. Its motion to dismiss is therefore denied, and it is ordered to file its reply to the Counterclaim on or before November 15, 1982.

grounds as well as agency principles.