CAPITOL INDEMNITY CORPORATION, Plaintiff-Appellant, v. STEWART SMITH INTERMEDIARIES, INC., Indiv. and f/k/a Stewart Smith East, Inc., *et al.*, Defendants-Appellees.

First District (1st Division)  No. 1—90—1193

Opinion filed May 11, 1992.

Pretzel & Stouffer, Chartered, of Chicago (Joseph B. Lederleitner, John V. Smith III, Robert Marc Chemers, and Michael G. Bruton, of counsel), for appellant.

Peterson & Ross, of Chicago (Robert S. Milnikel, Vincent P. Reilly, and James A. Knox, Jr., of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Capitol Indemnity Corp. (Capitol) appeals an order of the circuit court of Cook County dismissing its complaint against defendant Stewart Smith Intermediaries, Inc. (SSI), individually and formerly known as Stewart Smith East, Inc. (SSE); Stewart Smith Treaties, Inc. (SST); Stewart Smith & Kingaby, Inc. (SS&K), and Stewart Smith & Company, Inc. (SS & Co.). For the following reasons, we affirm.

The record on appeal indicates the following facts. On July 13, 1989, Capitol filed a complaint against defendant in the circuit court of Cook County. The complaint indicated that it was a refiling of a cause of action previously dismissed for want of prosecution on April 4, 1989. The complaint was 24 pages long; 115 pages of exhibits were attached.

Count I of the complaint alleged the following facts. In 1973, Capitol agreed to reinsure the business of certain issuing insurance companies whose policies were placed and managed by a common agent. This agreement was memorialized in two contracts, numbered 0697 and 0697A. Contract 0697 was a 20% quota share rein-

surance agreement between Capitol and the policy issuing companies of OMNI Aviation Managers, Inc. (OMNI), which included the National Indemnity Company (National), among others. Contract 0697 was signed by Capitol and Michael Eisenstadt, president of OMNI, as the agent of National. Contract 0697A was a retrocession agreement between Capitol and the Superior Insurance Company of Providence (Superior). Under this agreement, a portion of the business Capitol had reinsured would go to Superior on the same terms as the original agreement. Michael Eisenstadt signed 0697A as an officer of Superior. This second agreement was typed on SST stationery.

In 1976, Capitol filed suit in the Federal District Court for Central California against Eisenstadt, OMNI, Superior and Upstart Eagle, Inc. (Upstart), which managed both OMNI and Superior and which was also owned by Eisenstadt. Capitol alleged that it was fraudulently induced into executing the retrocession agreement. The Federal court entered a judgment in favor of Capitol for $75,980.29 in compensatory damages and $100,000 in punitive damages.

The complaint also alleged that defendant brokered the business of the issuing-fronting companies, including the business of National. Defendant was allegedly compensated for the brokerage services. The complaint then alleged that at the time of the transactions at issue, Capitol dealt with employees or agents of the defendant broker, usually Harry Ambrose and Leonard Corsentino, who were officers and directors in the various Stewart Smith companies. The complaint listed a number of exhibits from the California lawsuit which identify communications between the various parties, including alleged wrongdoers. The complaint also noted that an order in the California lawsuit states that in 1972 and 1973, Capitol and Eisenstadt (on behalf of Superior) negotiated through SST.

The complaint also alleged that Ambrose and Corsentino were initially employed by SS & Co. In 1969, the reinsurance business of SS & Co. was spun off to SS&K, which later changed its name to SST. Around 1975, SST was merged into SSE. SSI was formed in 1982; sometime thereafter the reinsurance business of SSE was merged into SSI. Ambrose and Corsentino allegedly brokered business for these entities as a business conduit, as the entities were interrelated and had a common business purpose and common control. It was also alleged that the parent corporation for these various entities is Stewart Wrightson, P.L.C.

Count I further alleged that through Ambrose and Corsentino, defendant became aware of negative facts regarding the acquisition

and runoff of the fronting companies managed by Eisenstadt for several underwriting periods prior to the period beginning July 1, 1972. These negative facts were set forth in 11 subparagraphs of the complaint. The complaint concluded that defendant therefore "had knowledge of, consented to and acquiesced" in Eisenstadt's activities, was in "complicity" with his wrongdoings and cooperated with others to "silently aid and abet Eisenstadt." The complaint alleges in the alternative that defendant conspired with Eisenstadt to defraud Capitol.

Count I then alleged that defendant, as a broker/intermediary, acted as an agent for Capitol in the reinsurance transaction and stood in a fiduciary relationship to Capitol. The failure of defendant to disclose the allegedly negative facts specified in the complaint was alleged to be a breach of that fiduciary duty which caused Capitol to suffer losses in excess of $735,278 plus interest, costs and prejudgment interest. Count I sought to pierce defendant's corporate veil to ensure that Capitol could recover the damages it sought.

Count II of the complaint incorporated the allegations of count I, but sought the production of a number of documents pursuant to an accounting in equity. Count II also alleged that it was not until the adjudication of the California lawsuit in 1980 that Capitol discovered defendant's alleged wrongful acts.

On August 13, 1989, defendant moved to dismiss the complaint. Following a hearing on the motion, the trial court entered an order on January 19, 1990, granting defendant's motion to strike and dismiss the complaint, but also granting leave for Capitol to file an amended complaint within 28 days. On February 20, 1990, Capitol filed a motion to extend the time for filing an amended complaint, stating that its failure to meet the deadline in the trial court's order was due to an inadvertent error. On February 27, 1990, defendant filed a motion to dismiss the case with prejudice, noting that Capitol's motion indicated that the amended complaint was not completed at that time and sought an additional 14 days to file. Capitol then sought leave to file its amended complaint, which contained substantially similar allegations to the initial complaint, but which ran only 16 pages in length. Most of the exhibits were not attached to the amended complaint. Defendant filed its objections to that motion.

Following a hearing held on April 12, 1990, the trial court granted Capitol's motion to file the amended complaint, but also

granted SSI's motion to dismiss the amended complaint with prejudice. Capitol timely filed a notice of appeal.

■ The sole issue on appeal is whether the trial court erred in dismissing Capitol's amended complaint. A trial court should dismiss a cause of action on the pleadings only if it is clearly apparent that no set of facts can be proven which will entitle a plaintiff to recover. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 504, 565 N.E.2d 654, 657.) This broad statement, however, should not be misconstrued as an adoption of notice pleading. (*Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 438, 546 N.E.2d 580, 585.) Illinois is a fact-pleading jurisdiction. (*Washington v. Chicago Board of Education* (1990), 204 Ill. App. 3d 1091, 1096, 562 N.E.2d 541, 544.) When reviewing a dismissal, it is this court's duty not only to take all well-pleaded facts as true, but also to disregard mere conclusions of law or fact unsupported by the facts alleged. (See *Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.* (1991), 218 Ill. App. 3d 383, 389, 577 N.E.2d 1344, 1349.) On appeal, this court may affirm the dismissal of the claim on any legally valid basis appearing in the record. *Natural Gas Pipeline Co. v. Phillips Petroleum Co.* (1987), 163 Ill. App. 3d 136, 142, 516 N.E.2d 527, 531.

This court has recognized the difficulties facing a pleader in distinguishing between ultimate facts and conclusions and between pleading too much and too little. (*Washington*, 204 Ill. App. 3d at 1096, 562 N.E.2d at 544.) Nevertheless, the prolixity of Capitol's complaint should be noted. All pleadings must contain a "plain and concise statement of the pleader's cause of action." (Ill. Rev. Stat. 1989, ch. 110, par. 2—603(a).) The amended complaint, while shorter than its predecessor, still contains redundancies and does not appear to be either plain or concise. Capitol admits in its brief that the amended complaint "is not a model of pleading" while arguing that a lengthy pleading was necessary because of the complexity of the case. Yet the complexity of the case should underscore, rather than obviate, the necessity for a plain and concise statement of the cause of action. Moreover, if plaintiff believed that detailing the facts giving rise to the California litigation was essential to understanding the case, it should be noted that the brief contains numerous facts detailing the background of this litigation which may have aided the trial court in understanding the litigation, but which are absent from the pleadings. The complaint may also confuse the reader, for example, by referring to National as "the Defendant" in

paragraph 2 of its amended complaint, while later noting that National was dismissed as a defendant during the 1985 litigation.

Nevertheless, mere verbosity, repetition or the inclusion of surplusage will not warrant the dismissal of a complaint which states a cause of action. (See *In re Estate of Lipchik* (1975), 27 Ill. App. 3d 331, 334, 326 N.E.2d 464, 466.) We come, therefore, to the ultimate issue on appeal.

■■ Initially, Capitol argues that a complaint "need only allege sufficient facts to bring plaintiff's claim for a remedy within the scope of a legally recognized cause of action or equitable remedy." Capitol relies on *Adkins v. Sarah Bush Lincoln Health Center* (1989), 129 Ill. 2d 497, 544 N.E.2d 733, in support of this statement. *Adkins*, however, states that a complaint "must allege sufficient facts to bring plaintiff's claim for a remedy within the scope of a legally recognized cause of action." (*Adkins*, 129 Ill. 2d at 518, 544 N.E.2d at 743.) *Adkins* does not appear to allow a complaint which merely alleges an equitable remedy to survive a motion to dismiss. To the contrary, the *Adkins* court's use of the phrase "claim for a remedy" suggests that the former is a prerequisite to the latter, not vice versa.

■■ In this case, the allegations of Capitol's amended complaint include "complicity" or a civil conspiracy with Eisenstadt to defraud Capitol and breach of fiduciary duty by defendant. Capitol's brief, however, only discusses the alleged breach of fiduciary duty. Capitol has waived any argument that the amended complaint states a claim for "complicity" or civil conspiracy. 134 Ill. 2d R. 341(e)(7).

■■ An action for breach of fiduciary duty is not a tort; rather, it is controlled by the substantive laws of agency, contract and equity. (*Kinzer v. City of Chicago* (1989), 128 Ill. 2d 437, 445, 539 N.E.2d 1216, 1220.) An agency relationship is a fiduciary one; insurance brokers employed for a single transaction or series of transactions are agents, though they are independent contractors with respect to their physical activities. (See *American Environmental, Inc. v. 3-J Co.* (1991), 222 Ill. App. 3d 242, 249, 583 N.E.2d 649, 655.) Although an insurance broker typically represents the insured, the broker may also become the agent of the insurer or both parties. (*Browder v. Hanley Dawson Cadillac Co.* (1978), 62 Ill. App. 3d 623, 629, 379 N.E.2d 1206, 1211.) A reinsurance broker may be defined as "a solicitor of reinsurance who does not represent reinsurance companies and is employed by the ceding company (reinsured) to place reinsurance on its behalf with markets of his

choice, or as designated by the ceding company." (See *In re Pritchard & Baird, Inc.* (D.N.J. 1980), 8 Bankr. 265, 267 n.2, *aff'd without op. Hartford Fire Insurance Co. v. Francis* (3d Cir. 1981), 673 F.2d 1299, *aff'd without op. In re Pritchard & Baird, Inc.* (3d Cir. 1981), 673 F.2d 1301.) A reinsurance intermediary may be defined as "a reinsurance broker who negotiates contracts of reinsurance on behalf of the reinsured, usually with those reinsurers who recognize brokers and pay them commissions on reinsurance premiums ceded \*\*\*." (See *In re Pritchard & Baird, Inc.*, 8 Bankr. at 267 n.2.) However, a reinsurance intermediary may also provide similar services in transactions with reciprocal reinsurance arrangements and risk-spreading among multiple reinsurers. (See Sheffey, *Reinsurance Intermediaries: Their Relationship to Reinsured & Reinsurer*, 16 The Forum 922, 923 (1981) (Sheffey).) Whether a broker is an agent for the insured, the insurer or both is generally a question of fact. (*Browder*, 62 Ill. App. 3d at 629, 379 N.E.2d at 1211. But see Sheffey, 16 The Forum at 930-34 (criticizing application of agency principles in context of reinsurance intermediaries).) Nevertheless, assuming agency principles apply, in the context of a motion to dismiss, a complaint alleging an agency relationship must allege specific facts from which the existence of the agency can be inferred. See *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989), 131 Ill. 2d 145, 163, 545 N.E.2d 672, 680.

■ In this case, paragraph 8 of the amended complaint alleges that defendant brokered the business of the issuing-fronting companies. Paragraph 8A alleges that Capitol dealt with employees and agents of defendant, particularly Ambrose and Corsentino. Paragraph 8B alleges that Ambrose and Corsentino had numerous communications with the parties to the transactions at issue, including the alleged wrongdoers. Paragraph 8F alleges that Capitol entered into the transaction relying on defendant. Paragraph 11 alleges that defendant became aware of facts regarding the acquisition and run-off of the fronting companies managed by Eisenstadt for several underwriting periods prior to the period beginning July 1, 1972. Paragraphs 11A through 11J specifically describe allegedly negative facts regarding the transaction. Paragraph 13 alleges that defendant functioned in an insurance fronting operation as Capitol's agent, for which defendant was compensated. Paragraph 13 also alleges that defendant therefore had a fiduciary duty of good faith and honesty to Capitol. Paragraphs 14 and 16 allege that defendant's failure to disclose negative facts about the transaction consti-

tuted a breach of defendant's fiduciary duty which caused Capitol to suffer hundreds of thousands of dollars in losses.

Capitol has failed to allege specific facts from which the agency relationship can be inferred. The allegation that defendant was Capitol's agent is, by itself, a mere legal conclusion. (*Goodknight v. Piraino* (1990), 197 Ill. App. 3d 319, 326, 554 N.E.2d 1, 6.) The allegation that defendant, as a broker, spoke to the parties involved in the transaction does not allow an inference that defendant was plaintiff's agent, for such activity would have occurred regardless of which party or parties the broker or intermediary represented. (See Sheffey, 16 The Forum at 924.) The allegation that defendant was compensated for its services does not indicate who paid this compensation. Plaintiff's brief states that defendant "paid itself its one percent contractual fee before it disbursed any funds to Capitol." The record shows that the amended complaint does not allege this. Moreover, if defendant collected its "contractual fee," it would follow that there is a contract which allocates this fee to defendant. Such a document might have shed light on the nature of the relationship between the parties; indeed, an agency relationship is contractual in nature. Yet defendant failed to identify or discuss any document in its complaint or brief, *e.g.*, the reinsurance or retrocession agreements, indicating how and by whom defendant was paid.

Plaintiff argues that this court should construe the complaint liberally and infer that defendant was plaintiff's agent. Yet the liberal construction rule does not trump the rule that a court only accepts *well-pleaded* facts as true when reviewing a motion to dismiss. (*Teter v. Clemens* (1986), 112 Ill. 2d 252, 256-57, 492 N.E.2d 1340, 1342.) The existence or scope of an agency relationship is typically considered to be a factual question because its resolution depends upon facts such as the right of the principal to control the agent, the ability of the agent to enter into binding negotiations on behalf of the principal and the extent to which the alleged wrongful conduct was committed in the course of the alleged agency; generally, it is both unrealistic and unnecessary that a plaintiff include such details without the benefit of discovery. (See *Sherman v. Field Clinic* (1979), 74 Ill. App. 3d 21, 25, 392 N.E.2d 154, 157-58.) However, this rule is invoked in cases where the plaintiff is a third party. (See, *e.g.*, *Sherman*, 74 Ill. App. 3d 21, 392 N.E.2d 154.) In contrast, plaintiff here alleges that it was defendant's principal. In this context, plaintiff was required to allege more specific facts than are present in this complaint. In this case, the complaint does not specify what defendant did on plaintiff's behalf, plaintiff's

knowledge of any such acts or even the parties' course of dealings (other than communicating with each other) during the transaction. Thus, as Capitol has failed to adequately allege an agency, it has also failed to adequately allege a fiduciary relationship or to state a cause of action for breach of fiduciary duty.

Plaintiff's reply brief hints that the complaint states a cause of action for fraud. Although plaintiff has waived this argument for the purposes of appeal, we note that the failure to adequately allege the agency relationship also results in failure to state a cause of action for fraudulent concealment of facts. Cf. *Wright v. Chicago Title Insurance Co.* (1990), 196 Ill. App. 3d 920, 926, 554 N.E.2d 511, 515 (plaintiff required to plead that defendant intended to deceive and had duty to speak).

Finally, plaintiff contends that the trial court erred in dismissing the amended complaint with prejudice. The decision whether to permit further amendment of pleadings or to terminate the litigation rests within the discretion of the trial court. (See *Plocar v. Dunkin' Donuts of America, Inc.* (1981), 103 Ill. App. 3d 740, 749, 431 N.E.2d 1175, 1182.) In this regard, the trial court may consider the ultimate efficacy of the claim and whether plaintiff had prior opportunities to amend. (*Plocar*, 103 Ill. App. 3d at 749, 431 N.E.2d at 1182.) Section 2—615 does not grant plaintiffs the right to unlimited amendment. See *Plocar*, 103 Ill. App. 3d at 750, 431 N.E.2d at 1182.

In this case, the record shows that the trial court was faced with a 1989 complaint which was a refiling of an action from 1985, based on alleged acts taking place in the early-to-mid-1970's. The initial 1989 complaint was dismissed with leave to amend within 28 days. Plaintiff failed to amend within 28 days; the trial court granted plaintiff additional time to file an amended complaint. This amended complaint was only slightly less prolix than its predecessor and equally defective in stating a claim. Given this record, plaintiff has failed to show that the trial court abused its discretion in dismissing the amended complaint with prejudice.

For all the aforementioned reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

BUCKLEY, P.J., and MANNING, J., concur.