BIOGENETICS, LTD., Plaintiff-Appellant, *v.* THE DEPARTMENT OF PUBLIC HEALTH, Defendant-Appellee.

First District (1st Division)    No. 79-2403

Opinion filed December 8, 1980.

Seth A. Eisner, Rosaire M. Nottage, and Michael Sennett, all of Bell, Boyd, Lloyd, Haddad & Burns, of Chicago, for appellant.

Tyrone C. Fahner, Attorney General, of Chicago (Myra Turner, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

After an administrative proceeding, the Director of the Department of Public Health found that Biogenetics, Ltd., had committed certain violations of the Ambulatory Surgical Treatment Center Act and the Rules and Regulations of the Department of Public Health. On the basis of this finding, the Director ordered a 180-day suspension of Biogenetics'

license. The trial court affirmed the suspension order. Biogenetics filed an emergency motion for a stay pending appeal. The motion was granted by this court.

We reverse.

The principal issue in this appeal is whether the facts presented in previous proceedings were legally sufficient to justify a 180-day suspension of a license under section 7 of the Ambulatory Surgical Treatment Center Act (Ill. Rev. Stat. 1979, ch. 111½, par. 157—8.7), which provides that licenses may be suspended only for a "substantial failure to comply" with the Ambulatory Surgical Treatment Center Act or the Rules and Regulations of the Department of Public Health.

Biogenetics, Ltd. (Biogenetics), is an ambulatory surgical treatment center (astc), licensed to perform first trimester termination of pregnancy procedures. On January 3, 1979, the Director of the Department of Public Health (Director) closed Biogenetics and sought permanent revocation of the clinic's license by the issuance of an order of summary suspension of license.

The summary order initially contained 45 counts charging Biogenetics with numerous violations of the Ambulatory Surgical Treatment Center Act (ASTC Act) (Ill. Rev. Stat. 1979, ch. 111½, par. 157—8.1 *et seq.*) or the Department's Rules and Regulations. The Department withdrew 2 of the 45 counts. An administrative hearing was held on the merits of the remaining 43 counts before a hearing officer appointed by the Director. The officer concluded that the evidence did not support the charges with respect to 28 of the 43 counts. On the basis of the hearing officer's findings, the Director ordered a 180-day suspension of Biogenetics' license retroactive to January 3, 1979.

The Director's 180 day suspension of Biogenetics' license was based upon two specific factual situations which involved the performance of medical procedures by two individuals who were not licensed to practice medicine in Illinois. The first involved Dr. Luis Garcia Nique. The second involved Dr. Shaista Khan.

Dr. Nique performed five termination of pregnancy procedures at Biogenetics on October 18, 1978. Nique's credentials were stipulated by the parties. He received his Doctor of Medicine from a Peruvian medical school. He then came to the United States and successfully completed a residency in pathology and two levels of graduate residency in obstetrics-gynecology. Thereafter, Nique applied for and received a license to practice medicine in North Dakota. In late August 1978, he applied for a permanent license in Illinois under the reciprocity provision of the Illinois Medical Practice Act. Ill. Rev. Stat. 1979, ch. 111, par. 4407.

In early October 1978, Nique informed Dr. Baldoceda, Biogenetics' medical director, that he received his Illinois medical license and re-

quested that he be permitted to perform procedures at Biogenetics. Baldoceda consented. On the morning of October 18, 1978, when Nique appeared at Biogenetics, he was asked to list his licensing credentials on a sheet of paper. Later that same day, when it was discovered that Nique was not yet licensed to practice in Illinois, he was asked to leave. The record indicates that less than 1 month after his performance of the procedures at Biogenetics, the Illinois Committee on Medical Examiners recommended to the Department of Registration and Education that Nique be issued a license to practice medicine in Illinois.

Dr. Khan received her Doctor of Medicine from a medical school in Pakistan. She completed a 1-year internship at a teaching hospital in Pakistan. Thereafter, she completed a 4-year residency in obstetrics and gynecology at another hospital in Pakistan. As of late 1978, she was not licensed to practice medicine in Illinois, but was studying for a physician's licensing examination to be administered in early 1979.

Khan was employed by Biogenetics for a 5-month period, which ended in the fall of 1978. Her duties included the administration of injections at the direction of licensed physicians and the performance of pelvic examinations under the supervision and review and at the direction of licensed physicians. On occasion, Khan performed screening pelvic examinations on patients who received negative or inconclusive pregnancy test results. Additionally, she sometimes performed 2-week postoperative pelvic examinations, the results of which were recorded on patients' charts to be reviewed by a licensed physician. In one instance, on September 16, 1978, Khan failed to seek physician review of a postoperative pelvic examination prior to the patient's discharge.

The Director found that Nique's performance of five termination of pregnancy procedures constituted a violation of the ASTC Act since he was not licensed to practice medicine in Illinois. Additionally, the Director found that Khan's performance of medical procedures constituted a violation of the ASTC Act since she was not licensed to perform any medical procedures in Illinois.

Biogenetics filed a complaint for administrative review on April 11, 1979. Upon administrative review, the trial court affirmed the Director's order. Biogenetics then filed its notice of appeal on December 18, 1979. On December 31, 1979, a motion for a stay pending appeal was granted by this court.

The principal issued on appeal is whether the facts presented in the administrative hearing were legally sufficient to justify a 180-day suspension of a license under section 7 of the ASTC Act (Ill. Rev. Stat. 1979, ch. 111½, par. 157—8.7). Section 7 provides that the Director of the Department may suspend an astc license if he finds that there has been a "substantial failure to comply" with the ASTC Act or the Department's

Rules and Regulations. Biogenetics maintains that in order to establish that there was a substantial failure to comply, it is incumbent upon the Department to establish that the conduct of Biogenetics has resulted in injury to the public safety and health of a more serious kind or to a significantly greater extent than is normally incident to the operation of an astc. Further, relying on *Dorfman v. Gerber* (1963), 29 Ill. 2d 191, 193 N.E.2d 770, Biogenetics claims that a showing of technical or *de minimis* violations of the ASTC Act or the Rules and Regulations is not enough. We agree with Biogenetics' description of the standard. In order to determine whether there was a substantial failure to comply, it is essential that we analyze the statutory provisions and the facts on which the Director based his finding.

With respect to Dr. Nique, the Director found that since he was not "licensed to practice medicine" in Illinois, his performance of five termination of pregnancy procedures at Biogenetics constituted a violation of sections 6(b) and 3 (E) of the ASTC Act. (Ill. Rev. Stat. 1979, 111½, pars. 157—8.6(b), 157—8.3(E).) Section 6 of the ASTC Act provides:

> "[T]he Director shall only issue a license if he finds that the applicant facility complies with this Act and the rules, regulations and standards promulgated pursuant thereto and * * * permits a surgical procedure to be performed only by a physician, podiatrist or dentist who at the time is privileged to have his patients admitted by himself or an associated physician and is himself privileged to perform surgical procedures in at least one Illinois hospital * * * ." (Ill. Rev. Stat. 1979, ch. 111½, par. 157—8.6(b).)

Section 3(E) of the ASTC Act defines a physician as " * * * a person licensed to practice medicine in all of its branches in the State of Illinois." (Ill. Rev. Stat. 1979, ch. 111½, par. 157—8.3(E).) Rule 11.1 of the Department provides that "all surgical procedures must be performed by a licensed physician."

Biogenetics asserts that although Nique was not licensed to practice medicine in Illinois, he was legally authorized to do so pursuant to the reciprocity provision of the Illinois Medical Practice Act (Ill. Rev. Stat. 1979, ch. 111, par. 4407) which allows for a grace period during the pendency of an application for licensure by reciprocity. Section 2c of the Medical Practice Act expressly provides:

> "[t]his Act does not prohibit the practice of medicine by a person who is licensed to practice medicine in all of its branches in any other state* * * who has applied in writing to the Department, in form and substance satisfactory to the Department, for a license to practice medicine in all of its branches and has complied with all of the provisions of Section 13, except the passing of an examination which may be given under Section 13, until:

(a) the expiration of 6 months after the filing of such written application * * * ." Ill. Rev. Stat. 1979, ch. 111, par. 4407.

The Director acknowledged that Nique satisfied each requirement of sections 2(c) and 13 of the Medical Practice Act (Ill. Rev. Stat. 1979, ch. 111, pars. 4407, 4426), and therefore was entitled to practice medicine in Illinois for a period of 6 months. He found, however, that sections 6(b) and 3(E) of the ASTC Act preclude a physician authorized to practice medicine in Illinois under the grace period provision from providing any medical services in an astc since technically that physician is not "licensed to practice medicine" in Illinois.

Biogenetics claims that if the Department's interpretation of the ASTC Act is adopted, it would destroy the 6-month grace period provision of section 2(c) of the Medical Practice Act.

Neither the provisions of the ASTC Act nor the provisions of the Medical Practice Act involved in this case have been the subject of judicial inquiry. Having carefully reviewed the language of both statutes, we cannot say that the Director's finding that Biogenetics technically violated the ASTC Act was manifestly erroneous.

■■ We disagree, however, with the finding that Biogenetics "substantially failed to comply" with the ASTC Act in allowing Nique to perform five termination of pregnancy procedures on the morning of October 18, 1978. The record clearly indicates that the procedures were performed under the direct supervision and observation of a licensed physician. The record further indicates that Nique himself represented to a Biogenetics' nurse that he had an Illinois license and when he was unable to produce his license he was asked to leave the clinic. Thus, while Biogenetics may have been guilty of a technical violation of the ASTC Act in allowing Nique to perform the procedures, the violation did not constitutes a "substantial failure to comply" with the ASTC Act.

With respect to Dr. Shaista Khan, the Director concluded, and the court below affirmed the conclusion, that so long as Khan was not licensed as a certified physician's assistant under Illinois law, her performance of administering injections and performing pelvic examinations, under the direction of licensed physicians, constituted violations of Rules 6.1 and 12 of the Department. Additionally, the Director found that in one instance, Khan recorded the results of a pelvic examination and failed to have the results reviewed by a licensed physician.

Rule 6.1 provides that "[s]ufficient qualified personnel to properly operate programs for which the facility is licensed shall be provided." "Qualified personnel" is not defined in the Rules and Regulations. Section 3 of the Physician's Assistants Practice Act (Ill. Rev. Stat. 1977, ch. 111, par. 4754) defines a physician's assistant as "any person not a physician who is certified to perform medical procedures under the supervision of persons licensed to practice under 'The Medical Practice Act.'"

There is no evidence in the record that Khan was certified as a physician's assistant. It is ludicrous to assert, however, that because she was not certified as a physician's assistant, that she was not qualified. The two terms are not synonymous. While we do not condone the practice of employing uncertified or unlicensed personnel in an astc, we are of the opinion that the certified or licensed status of an employee must be considered in conjunction with other factors to determine whether the employee is "sufficiently qualified."

The record reflects that Khan had received a medical doctorate degree. She had completed an internship and 4 year residency in obstetrics-gynecology. In the course of the 10 years in which she was employed in the medical field, she performed approximately 40,000 pelvic examinations. All of the experts, including the Department's own experts, testified that a physician with Khan's qualifications, performing routine pelvic examinations under a physician's supervision, created no risk or danger to the public health or safety.

■■ We find that neither Khan's uncertified status nor her failure to have the results of one post-operative pelvic examination reviewed by a licensed physician constitutes a "substantial failure to comply" with the provison of the ASTC Act. As a general rule, we give deference to the finding of an administrative officer. When an administrative officer, however, has acted arbitrarily and capriciously and thereby abused the discretionary power vested within him, the courts will not hesitate to intervene. (*Dorfman v. Gerber* (1963), 29 Ill. 2d 191, 193 N.E.2d 770.) We find that Biogenetics' *de minimis* violations of the ASTC Act and the Rules and Regulations of the Department were insufficient to warrant a 180-day suspension of a license.

■■ Biogenetics raises challenges to the constitutionality of the ASTC Act and the Rules and Regulations. We decline the opportunity to address these arguments.

Biogenetics additionally raises a subsidiary claim on review pertaining to the issue of whether the summary suspension of its license was illegal. The clinic contends that the issue of the legality of the order of summary suspension is not moot and should be remanded for a full hearing. Further, the clinic contends that it has a sufficient stake in the outcome of the proceedings and that the issue, therefore, is not moot. The primary basis for this contention is that its reputation has been tainted by the widespread publicity which resulted from the suspension and that the summary suspension may negatively affect Biogenetics' chances for license renewal. Further, Biogenetics suggests that since the issue presented is of substantial interest to the public, the issue should not be declared moot.

It is our opinion that the issue presented is indeed moot and should not be remanded for further hearing. Our decision to reverse the

Director's finding that there was a "substantial failure to comply" should sufficiently clear any possible taint on Biogenetics' reputation.

For the foregoing reasons, we reverse the order of the circuit court of Cook County affirming the suspension order of the Department of Public Health.

Order reversed.

GOLDBERG, P. J., and O'CONNOR, J., concur.